STATE of Minnesota, Respondent,

v.

John Irving PETTEE, Petitioner,
Appellant.

No. C6–93–939.

Supreme Court of Minnesota.

Oct. 6, 1995.

Rehearing Denied Dec. 6, 1995.

John M. Stuart, State Public Defender, Mark D. Nyvold, Special Asst. Public Defender, St. Paul, for appellant.

John Irving Pettee, Stillwater, pro se.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Michael O. Freeman, Hennepin County Atty., Donna J. Wolfson, Asst. County Atty., Minneapolis, for respondent.

## OPINION

ANDERSON, Justice.

The Hennepin County Grand Jury returned an indictment against defendant, John Irving Pettee, for third-degree murder and second-degree manslaughter. Pettee moved to dismiss the indictment on numerous grounds, including the improper introduction of inadmissible evidence. Although the trial court found that sufficient evidence existed to support a finding of probable cause, the court was unable to find that the grand jury deliberations were not affected by

the introduction of the inadmissible evidence. The court dismissed the indictment for a curable defect pursuant to Minn.R.Crim.P. 17.06, subd. 2(2)(a). The dismissal was automatically stayed for seven days pursuant to Minn.R.Crim.P. 17.06, subd. 4(3).

Within seven days after the dismissal of the indictment, the state filed a criminal complaint against Pettee charging third-degree murder and second-degree manslaughter, the identical offenses for which Pettee was originally indicted. A successor grand jury was impanelled, and the state resubmitted the case against Pettee.[1] The successor grand jury returned an indictment against Pettee for first-degree murder, Minn.Stat. § 609.185(2) (1992).

■ Pettee moved to dismiss the second indictment, alleging that evidence had been improperly admitted, and maintaining that the state was barred from pursuing an indictment for anything other than the particular offenses contained in the original indictment. Specifically, Pettee maintained that, after the court dismissed the first indictment for a curable defect, Rule 17.06, subd. 4(3) allowed "further prosecution [only] for the same offense," and that first-degree murder was not the "same offense" as third-degree murder. The court denied Pettee's second motion to dismiss.

Pettee waived his right to a jury and agreed to a bench trial on stipulated facts supporting a conviction of second-degree felony murder. The trial court found Pettee guilty of second-degree felony murder, the underlying felony being third-degree assault, and sentenced Pettee to 144 months in prison.

Pettee appealed to the Minnesota Court of Appeals, renewing his claim that Rule 17.06, subd. 4(3) barred the successor grand jury from indicting him for first-degree murder. The court of appeals affirmed the trial court. *State v. Pettee,* 511 N.W.2d 43 (Minn.App. 1994). We affirm.

## I.

Minn.R.Crim.P. 17.06, subd. 4(3) establishes the procedures that must be followed to preserve a prosecution when an indictment is dismissed for a curable defect. The rule provides in pertinent part:

If the dismissal is for * * * a defect that could be cured or avoided by an amended or new indictment, or complaint, *further prosecution for the same offense shall not be barred,* and the court shall on motion of the prosecuting attorney, made within seven (7) days after notice of the entry of the order granting the motion to dismiss, order that defendant's bail or other conditions of release be continued or modified for a specified reasonable time pending an amended or new indictment or complaint. * * * The specified time for such amended or new indictment or complaint shall not exceed sixty (60) days for filing a new indictment or seven (7) days for amending an indictment or complaint or for filing a new complaint. During the seven-day period for making the motion and during the time specified by the order, if such motion is made, dismissal of the indictment or complaint shall be stayed. If the prosecution does not make the motion within the seven-day period or if the indictment or complaint is not amended or if a new indictment or complaint is not filed within the time specified by the order, the defendant shall be discharged and *further prosecution for the same offense shall be barred* unless [one of three enumerated exceptions apply].

(Emphasis added.) The parties to this appeal attach conflicting interpretations to the clause, "further prosecution for the same offense shall not be barred."

■ When an indictment is dismissed for a curable defect, Pettee maintains that the "same offense" language of Rule 17.06, subd. 4(3) prevents the state from charging a defendant, either by complaint or by a succeeding indictment, with an offense that is greater in degree than the particular offense originally charged. Pettee claims that "same of-

---

1. In the present case, some of the witnesses who testified before the first grand jury did not testify before the successor grand jury. In addition, some of the exhibits that were presented to the successor grand jury had not been presented to the first grand jury.

fense" in the rule refers to the particular offense charged in the original indictment. He effectively reads the disputed portion of the rule to say: after the indictment's dismissal for a curable defect, further prosecution for the particular offense originally charged is not barred; but dismissal for a curable defect bars subsequent prosecution for all greater degrees of that particular offense arising out of the same criminal incident. Under Pettee's interpretation of Rule 17.06, subd. 4(3), the state is limited to charging a defendant with the particular crime contained in the original indictment, which necessarily includes all lesser-included offenses,[2] and a defendant is effectively acquitted of all higher degree crimes. Essentially, Pettee maintains that the "further prosecution for the same offense shall not be barred" language contained in Rule 17.06, subd. 4(3) effectively creates a statutory form of double jeopardy protection.

The trial court disagreed, and in its memorandum supporting its order denying Pettee's motion to dismiss the second indictment, the court explained that the language "simply provides notice that further prosecution for the same offense previously considered is not barred and may proceed by a new indictment." Affirming the trial court, the court of appeals stated that "the primary import of the rule's 'same offense' language is that jeopardy does not attach to grand jury proceedings." *Pettee,* 511 N.W.2d at 45; *see State v. Abraham,* 335 N.W.2d 745, 748 (Minn.1983), citing *Crist v. Bretz,* 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978) (stating, in bench trials, jeopardy attaches when the first witness is sworn or when evidence is received, and in jury trials, jeopardy attaches when the jury is impaneled and sworn).

■ The court of appeals continued its discussion by defining "same offense," as that phrase is used in Rule 17.06, subd. 4(3), to mean "same [or single] behavioral incident." *Pettee,* 511 N.W.2d at 45. The phrase "single behavioral incident" is commonly used in the context of determining whether Minn. Stat. § 609.035 prohibits a defendant either from being sentenced for multiple offenses or

from being successively prosecuted for multiple offenses. If a defendant commits multiple offenses against the same victim during a single behavioral incident, then Minn.Stat. § 609.035 requires the state to charge in a single prosecution all the offenses committed during that single behavioral incident. *See, e.g., State v. Johnson,* 273 Minn. 394, 141 N.W.2d 517 (1966). Further, Minn.Stat. § 609.035 provides that the defendant may be sentenced for only one of those offenses. *See, e.g., State v. Zuehlke,* 320 N.W.2d 79 (Minn.1982).

But the prohibitions of Minn.Stat. § 609.035 apply only if the multiple offenses arise out of a single behavioral incident. Generally, no one would contend that a defendant could not be sentenced or successively prosecuted for multiple offenses committed during two separate behavioral incidents or two different criminal episodes. The single behavior incident is the defining element or necessary ingredient in determining what the statute proscribes. Indeed, without attempting to catalogue the contexts, the single behavioral incident is the defining element in determining what is forbidden throughout various other areas of Minnesota's criminal law.

By defining "same offense" as "same [or single] behavioral incident," as the court of appeals did, Rule 17.06, subd. 4(3) effectively reads—further prosecution for any offense arising out of the same behavioral incident as the particular offense originally charged shall not be barred. Under the court of appeals' interpretation, the rule allows further prosecution for all offenses, the prosecution of which might otherwise be prohibited by various other areas of Minnesota's criminal law. Accordingly, the state may seek to re-charge the defendant both for the particular offense contained in the original indictment and for any other offense allegedly committed by the defendant. *See* Minn.R.Crim.P. 3.04, subd. 2. Thus, the court of appeals effectively concluded that "same offense," as that phrase is used in Rule 17.06, subd. 4(3), does not limit the state's charging decision in any way.

---

**2.** Lesser-included offenses are inherent in the definition of the greater offense. *See* Minn.Stat.

§ 609.04, subd. 1 (1992); *State v. Roden,* 384 N.W.2d 456, 457 (Minn.1986).

We agree with the court of appeals that "same offense," as it is used in Rule 17.06, subd. 4(3), does not limit or restrict the state's subsequent charging decision in any way. The rule contains no words of limitation. The rule's instruction, "further prosecution for the same offense shall not be barred," merely clarifies that further prosecution shall not be barred, whatever definition is ascribed to the phrase "same offense." The conclusion that the rule does not limit the charging decision is not affected by the definition of "same offense," whether "same offense" refers to the particular offense originally charged in the dismissed indictment, as Pettee maintains, or whether "same offense" means any offense arising out of the same behavioral incident as the originally charged offense, as the court of appeals held. In either case, the language is inclusive, rather than exclusive. That is, the language announces what is allowed rather than what is prohibited. By specifying that the state is allowed to prosecute further for the "same offense," the rule does not concomitantly imply that the state is prohibited from prosecuting further for anything that fails to fall under the definition of "same offense." Because we conclude that the rule's instruction, "further prosecution for the same offense shall not be barred," announces what is allowed, rather than what is prohibited, we need not decide whether the court of appeals correctly defined "same offense" as that

phrase is used in Rule 17.06, subd. 4(3) to mean "same [or single] behavioral incident." [3]

Contrary to Pettee's contention, we conclude that the "same offense" language contained in Minn.R.Crim.P. 17.06, subd. 4(3) does not create an additional form of statutory double jeopardy protection that would effectively acquit the defendant of all offenses arising out of the same behavioral incident that are greater in degree than the particular offense originally charged. Therefore, we conclude that after an indictment is dismissed for a curable defect, pursuant to Minn.R.Crim.P. 17.06, subd. 4(3), a grand jury may return a second indictment charging the defendant with an offense that is different from, in addition to, or greater in degree than the offense charged in the original indictment. *See State v. Iosue,* 220 Minn. 283, 291, 19 N.W.2d 735, 739 (1945) (stating the grand jury may consider the resubmission and return an indictment " 'with the same or different counts, if in its judgment the administration of justice require[s] it.' ") (quoting *State v. Ginsberg,* 167 Minn. 25, 30, 208 N.W. 177, 179 (1926)).

## II.

Pettee contends the state will be able to circumvent the indictment amendment process if the state is allowed to charge an offense in a second indictment that is greater in degree than the particular offense charged

3. Nevertheless, we note that this court's 1980 decision in *State v. Viergutz* supports the conclusion of the court of appeals that "same offense," as it is used in Rule 17.06, subd. 4(3), effectively should mean any offense arising out of the same behavioral incident as the particular offense originally charged. 288 N.W.2d 693 (Minn.1980). In *Viergutz,* the court addressed what penalty would be imposed on the state if, after dismissal of a charging instrument for a curable defect, the state failed to cure the defect within the rule's timing requirements. The court stated that the state's failure to file an amended complaint, an amended indictment, or a motion for a continuance within seven days following the dismissal bars further prosecution, unless one of the three enumerated exceptions applies. *Id.* at 697. Although *Viergutz* virtually ignored the rule's "same offense" language, the court announced that failure to timely cure the dismissed charging instrument barred *any* prosecution of the accused, both for the particular offense originally charged and for any greater or lesser included

offenses arising out of the same behavioral incident. Thus, in *Viergutz,* this court implicitly endorsed the same definition of "same offense" that the court of appeals ascribed to the phrase in the present case.

As the state surmises in its brief, if the state in this case had failed to satisfy the rule's timing requirements, "it is inconceivable" that Pettee would now concede that only prosecution for third-degree murder and second-degree manslaughter are barred by the rule. Rather, Pettee would most certainly be arguing that "same offense" means same behavioral incident and that any prosecution of him for the victim's death is now barred. To adopt Pettee's proposed definition of "same offense" would be to ascribe different definitions to that language depending on whether the state satisfies the rule's timing requirements. In contrast, the definition of "same offense" that the court of appeals adopted in the present case avoids inconsistent definitions of "same offense" within Rule 17.06, subd. 4(3).

in the dismissed indictment. But for the dismissal, Pettee contends, the state would have been confined to pursuing charges no greater in degree than those contained in the original indictment. Pettee's argument, however, ignores the broader context of the charging process, and an examination of that broader context undermines the impact of his argument.

■ The state in this case did not amend the original indictment. An amendment of an indictment occurs when the state or the court alters the charging terms of the indictment after the grand jury has finally passed on them. 42 C.J.S. *Indictments and Informations* § 193 (1991). Generally, an amendment to an indictment, made either before or after trial, must be of form, not of substance, which means the amendment may not charge a greater offense. Minn. R.Crim.P. 17.05. Here, however, the original indictment was dismissed and replaced by a complaint.

■ Following dismissal of an indictment for a curable defect, Rule 17.06, subd. 4(3) requires the state to elect a means of continuing the prosecution within seven days.[4] The state satisfies this requirement either by *moving* for a continuance of the stay or by *filing* a new or amended indictment or complaint within that seven-day period. Minn. R.Crim.P. 17.06, subd. 4(3); *State v. Dwire*, 409 N.W.2d 498, 503 (Minn.1987) (holding Rule 17.06, subd. 4(3)'s timing requirements satisfied by filing of a complaint within seven days after dismissal of indictment even

though the state failed to move to continue the stay within the seven-day period). Because the original indictment charged offenses that could not be punished by life imprisonment, the state in the present case competently recharged the defendant with a complaint. *See* Minn.R.Crim.P. 17.01. By filing the complaint, the state satisfied the timing requirements contained in the rule.

Having replaced the original indictment with a complaint, the state then resubmitted the charges to the grand jury, which in turn delivered a second indictment on the greater offense of first-degree murder. If a grand jury returns a "no-bill" (i.e., fails to return an indictment), the state may still resubmit the case to the grand jury as often as the court shall direct. Minn.R.Crim.P. 18.07. In deciding whether resubmission is allowed, the cause of the resubmission is immaterial, whether the need to resubmit arose: because the grand jury returned a no-bill; because the original indictment had been quashed; or because the court sustained an objection to the original indictment. *See Iosue*, 220 Minn. at 288–89, 19 N.W.2d at 738. Therefore, as in the no-bill situation, we conclude that the state is allowed to resubmit a case to the grand jury after the court dismisses the original indictment pursuant to Rule 17.06, subd. 4(3).

■ In the present case, the succeeding indictment charging the defendant with first-degree murder effectively amended the complaint that replaced the original indictment.[5] Prior to trial, Minn.R.Crim.P. 3.04, subd. 2

---

4. Unlike the no-bill situation, a defendant in the dismissal for a curable defect context frequently has been arrested and held to answer for the crimes charged. Rule 17.06, subd. 4(3) imposes time constraints for recharging the defendant in order to minimize the delay between dismissal and recharging. The rule's time constraints also recognize the circumstances faced by a suspect who has obtained a bail bond, and who might have to pay for a second bond if recharged after a dismissal. Rule 17.06, subd. 4(3) requires the state to recharge the defendant in the most expeditious manner available to it. The state in the present case did just that when it filed a complaint replacing the original indictment. Once the state satisfies the rationale for the time constraints by actually charging the defendant, the state is in the same position it was in prior to the initial grand jury presentation.

5. The charging procedure in the present case is consistent with the common practice of charging a first-degree murder suspect whereby the state initially charges the suspect by complaint and later voluntarily dismisses the complaint, replacing it with a first-degree murder indictment. Minn.R.Crim.P. 30.01 allows the state, provided it is not acting in bad faith, to voluntarily dismiss an *indictment without prejudice* and *later to* reindict based on the same or similar charges. *State v. Aubol*, 309 Minn. 323, 329–30, 244 N.W.2d 636, 640 (1976); *United States v. Hayden*, 860 F.2d 1483, 1488 (9th Cir.1988). Although the state must first obtain leave of court to dismiss an indictment, when the state requests a dismissal in good faith, the court is generally duty bound to honor the request. *Id.*

authorizes the trial court to freely permit amendments to the complaint so as to charge additional offenses. *State v. Bluhm*, 460 N.W.2d 22, 24 (Minn.1990) (holding that Minn.R.Crim.P. 17.05, which provides that the trial court may permit the prosecutor to amend a complaint only "if no additional or different offense is charged," applies only after jeopardy has attached, and under Rule 3.04, subd. 2, the court is relatively free to permit amendments to charge additional offenses before jeopardy attaches at trial); *State v. Doeden*, 309 Minn. 544, 546, 245 N.W.2d 233, 234 (1976) (same). Therefore, the state in this case was free to amend the complaint with the succeeding indictment, even though the indictment charged an additional offense, greater in degree than those offenses originally charged. We conclude that any perceived or potential circumvention of the indictment amendment process resulting from our decision is a cause for concern only if prosecutorial vindictiveness exists, and the proscription against such vindictiveness adequately protects the integrity of the charging process.

### III.

As we have explained, the prosecutor's charging procedure outlined above complies with the accepted procedure used to amend complaints and to resubmit indictments. Nevertheless, Pettee contends that an unconstitutional appearance of retaliation will result if, after an indictment has been dismissed for a curable defect, we allow the state to subsequently charge a defendant with an offense that is greater in degree than the particular offense charged in the original, dismissed indictment. Pettee further argues that increasing the charges against a defendant, after that defendant has successfully moved to dismiss the indictment against him, is unconstitutional because it effectively punishes the defendant for exercising his statutory rights and discourages defendants from challenging indictments. Thus, to satisfy constitutional due process concerns, Pettee argues that a presumption of prosecutorial vindictiveness should ensue when the state charges the defendant with an offense that is greater in degree than the particular offense charged in the original, dismissed indictment.

"To punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.'" *United States v. Goodwin*, 457 U.S. 368, 372, 102 S.Ct. 2485, 2488, 73 L.Ed.2d 74 (1982) (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978)). In limited situations in which action detrimental to the defendant has been taken after the defendant exercises a legal right, a presumption of prosecutorial vindictiveness will arise. *Goodwin*, 457 U.S. at 373, 102 S.Ct. at 2488–89. A presumption of vindictiveness, however, will arise only in those situations where a realistic likelihood of vindictiveness exists. *Id.* at 384, 102 S.Ct. at 2494. A mere opportunity for vindictiveness is insufficient to justify imposing an inflexible prophylactic presumption. *Id.*

In *Goodwin*, the United States Supreme Court discussed several procedural rights commonly invoked by defendants prior to trial that do not possess a realistic likelihood of a vindictive response. 457 U.S. at 381, 102 S.Ct. at 2492–93. The Court's list included filing suppression motions, pleading affirmative defenses, requesting psychiatric services, obtaining access to government files, demanding trial by jury, and, as in the present case, challenging the sufficiency of an indictment. *Id.* With respect to the assertion of these rights, the Court stated, "It is unrealistic to *assume* that a prosecutor's probable response to such motions is to seek to penalize and to deter." *Id.* (emphasis added).

The *Goodwin* Court found it significant that prior decisions in which the Supreme Court had imposed a presumption of vindictiveness involved the defendant's exercise of a procedural right that caused a complete retrial after the defendant had already been tried and convicted. *Goodwin*, 457 U.S. at 376, 102 S.Ct. at 2490. Under those circumstances, the Court stated that the institutional bias inherent in the judicial system against the retrial of issues that have already been decided might subconsciously motivate a vindictive response from the prosecutor or the court, thereby justifying a presumption of vindictiveness. *Id.* In contrast, the pretrial timing of the prosecutor's action in *Goodwin*

suggested that a presumption of vindictiveness was not warranted.

As further support for its refusal to impose a prophylactic presumption, the Supreme Court stated:

> To presume that every case is complete at the time an initial charge is filed * * * is to presume that every prosecutor is infallible—an assumption that would ignore the practical restraints imposed by often limited prosecutorial resources.

*Goodwin,* 457 U.S. at 382 n. 14, 102 S.Ct. at 2493 n. 14. In addition, the Court admonished:

> There is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting. In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance.

*Goodwin,* 457 U.S. at 381, 102 S.Ct. at 2492. Concluding, the Court maintained, "A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution." *Id.,* 457 U.S. at 382, 102 S.Ct. at 2493.

We find *Goodwin*'s reasoning persuasive. Considering the pretrial context presented in this case, we decline to impose an inflexible prophylactic presumption of vindictiveness whenever the state charges a defendant with an offense that is greater in degree than the particular offense charged in the original, dismissed indictment. *Cf. State v. Alexander,* 290 N.W.2d 745, 749 (Minn. 1980) (refusing to impose a presumption of vindictiveness where the state added new and distinct counts to the complaint after the first trial ended in a mistrial, opting instead to apply a standard of "vindictiveness in fact"); *State v. Spaulding,* 296 N.W.2d 870, 873 (Minn.1980) (refusing to impose a presumption of vindictiveness, and holding the state may constitutionally reinstate charges

that were dismissed in a plea agreement if the defendant successfully challenges his conviction on appeal). The mere juxtaposition of the fact that the defendant successfully moved to dismiss his indictment, with the fact that the prosecutor subsequently obtained an indictment charging a greater offense, does not warrant a presumption of improper prosecutorial motive. In declining to impose a presumption of vindictiveness, we do not foreclose the possibility that the defendant in an appropriate case might objectively prove that the prosecutor's charging decision was motivated by a desire to punish him for doing something that the law plainly allows him to do. Absent the presumption, however, the defendant retains the burden of proving prosecutorial vindictiveness. *United States v. Punelli,* 892 F.2d 1364, 1372 (8th Cir.1990). Pettee has failed to sustain his burden because the evidence in the present case is not sufficient to support a claim that actual vindictiveness existed.

Affirmed.

COYNE, Justice (dissenting).

I respectfully dissent. This case is complicated only because the majority opinion fails to apply a criminal rule—Minn.R.Crim.P. 17.06, subd. 4(3)[1]—according to its plain language and as it was clearly intended to be applied.

The facts are simple. The prosecutor originally took the matter before the grand jury and instructed the jurors on the elements of first-, second- and third-degree murder as well as first- and second-degree manslaughter, adding that it was up to the grand jurors to decide what offenses, if any, to charge. The grand jury returned an indictment for third-degree murder.

Defendant persuaded the district court to dismiss the indictment because the prosecutor presented improper evidence to the grand jury.

The prosecutor then re-presented the matter to a successor grand jury. This time,

1. Minn.R.Crim.P. 17.06, subd. 4(3) provides in part as follows:

    If the dismissal [of the charging instrument] is for * * * a defect that could be cured or avoided by an amended or new indictment, or complaint, further prosecution for the *same offense* shall not be barred * * *. (Emphasis added.)

however, the prosecutor did not instruct the jurors on the elements of first-degree, second-degree, and third-degree murder and first- and second-degree manslaughter as he had on the presentation to the original grand jury. Instead, the prosecutor read only the instruction for first-degree murder, adding that the grand jurors could review a booklet containing other instructions if they wished. This time the grand jury indicted defendant for first-degree murder instead of third-degree murder.

Defendant moved to dismiss, arguing that while further prosecution for the "same offense" as originally charged was not barred, first-degree murder was not the same offense as third-degree murder but a clearly different, more serious offense. The district court denied the motion.

With the agreement of the prosecutor, defendant stipulated to certain facts supporting a finding of second-degree murder and waived his right to a jury trial on the understanding that he was free to challenge the denial of his motion to dismiss the second indictment. The district court, acting as trier of fact, found defendant guilty of second-degree murder.

In its entirety Rule 17.06, subd. 4(3), Minn. R.Crim.P., provides as follows:

> If the dismissal is for failure to file a timely complaint as required by Rule 4.02, subd. 5(3), or for a defect that could be cured or avoided by an amended or new indictment, or complaint, *further prosecution for the same offense shall not be barred,* and the court shall on motion of the prosecuting attorney, made within seven (7) days after notice of the entry of the order granting the motion to dismiss, order that defendant's bail or the other conditions of release be continued or modified for a specified reasonable time pending an amended or new indictment or complaint.
>
> In misdemeanor cases, if the defendant is unable to post any bail that might be required under rule 6.02, subd. 1, then the defendant must be released subject to such non-monetary conditions as the court deems appropriate under that rule. The specified time for such amended or new indictment or complaint shall not exceed sixty (60) days for filing a new indictment or seven (7) days for amending an indictment or complaint or for filing a new complaint. During the seven-day period for making the motion and during the time specified by the order, if such motion is made, dismissal of the indictment or complaint shall be stayed. *If the prosecution does not make the motion within the seven-day period or if the indictment or complaint is not amended or if a new indictment or complaint is not filed within the time specified by the order, the defendant shall be discharged and further prosecution for the same offense shall be barred* unless the prosecution has appealed as provided by law, or unless the defendant is charged with murder and the court has granted a motion to dismiss on the ground of the insufficiency of the evidence before the grand jury. In misdemeanor cases and also in gross misdemeanor cases under Minn.Stat. § 169.121 or Minn.Stat. § 169.129 dismissed for failure to file a timely complaint within the time limits as provided by Rule 4.02, subd. 5(3), further prosecution shall not be barred unless additionally a judge or judicial officer of the court has so ordered.

(Emphasis added.)

This rule was drafted, as were all the rules included in the Minnesota Rules of Criminal Procedure, by an advisory committee composed of eminently qualified prosecutors, defense attorneys, and judges, all of them fairminded and well-acquainted with the day-by-day practicalities of the practice of criminal law. The rules they drafted are plain and straightforward, and, it seems to me, the rules mean what they say. Consequently, I cannot comprehend any basis for the majority's conclusion that "the same offense" means "an offense that is different from, in addition to, or greater in degree than the offense charged in the original indictment." (Op. at 130.)

My puzzlement over this wholesale revision of the language of Rule 17.06, subd. 4(3) is intensified by the fact that the term "offense" has for many years had, in the context of the criminal law, a commonly understood meaning. The Minnesota Criminal Code, en-

acted in 1963, followed directly on the heels of the Model Penal Code (MPC), which was drafted over a 10–year period culminating in its adoption by the American Law Institute in 1962. Throughout the MPC the term "offense" is tied to a crime described in a particular section of the Code. MPC § 1.05(1) distinguishes "conduct" from "offense":

> No conduct constitutes an offense unless it is a crime or violation under this Code or another statute of this State.

The explanatory note to section 1.05 elucidates in these words:

> Subsection (1) provides that no conduct constitutes an offense unless it is defined as a crime or violation by statute, thus abolishing common law offenses.

MPC § 1.07 sets limits for prosecution and conviction of multiple offenses:

> (1) When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense. He may not, however, be convicted of more than one offense * * *.[2]

That provision found its way into the 1963 Minnesota Criminal Code as Minn.Stat. §§ 609.035 and 609.04. Minn.Stat. § 609.035 provides as follows:

> Subdivision 1. Except as provided in subdivision 2, and in sections 609.251, 609.585, 609.21, subdivisions 3 and 4, 609.2691, 609.486, 609.494, and 609.856, if a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses and a conviction or acquittal of any one of them is a bar to prosecution for any other of them. All the offenses, if prosecuted, shall be included in one prosecution which shall be stated in separate counts.

> Subd. 2. (a) When a person is being sentenced for a violation of a provision listed in paragraph (f), the court may sentence the person to a consecutive term of imprisonment for a violation of any other provision listed in paragraph (f), notwithstanding the fact that the offenses arose out of the same course of conduct, subject to the limitation on consecutive sentences contained in section 609.15, subdivision 2, and except as provided in paragraphs (b), (c), and (d) of this subdivision.

> (b) When a person is being sentenced for a violation of section 169.129 the court may not impose a consecutive sentence for a violation of a provision of section 169.121, subdivision 1, or for a violation of a provision of section 171.20, 171.24, or 171.30.

> (c) When a person is being sentenced for a violation of section 171.20, 171.24, or 171.30, the court may not impose a consecutive sentence for another violation of a provision in chapter 171.

> (d) When a person is being sentenced for a violation of section 169.791 or 169.797, the court may not impose a consecutive sentence for another violation of a provision of sections 169.79 to 169.7995.

> (e) This subdivision does not limit the authority of the court to impose consecutive sentences for crimes arising on different dates or to impose a consecutive sentence when a person is being sentenced for a crime and is also in violation of the conditions of a stayed or otherwise deferred sentence under section 609.135.

> (f) This subdivision applies to misdemeanor and gross misdemeanor violations of the following if the offender has two or more prior impaired driving convictions as defined in section 169.121, subdivision 3:

> (1) section 169.121, subdivision 1, driving while intoxicated;

> (2) section 169.121, subdivision 1a, testing refusal;

> (3) section 169.129, aggravated driving while intoxicated;

> (4) section 169.791, failure to provide proof of insurance;

> (5) section 169.797, failure to provide vehicle insurance;

---

**2.** The explanatory note for MPC § 1.07 includes this statement:

\* \* \*

Section 1.07 states a general rule barring separate trials for multiple offenses based on the same conduct or arising from the same criminal episode, when those offenses are within the jurisdiction of the same court and are known to the prosecuting officer at the time of the original trial. \* \* \* \*

(6) section 171.20, subdivision 2, operation after revocation, suspension, cancellation, or disqualification;

(7) section 171.24, driving without valid license;

(8) section 171.30, violation of condition of limited license; and

(9) section 609.487, fleeing a peace officer.

Minn.Stat. § 609.04, subd. 1, deals with conviction of a lesser offense:

Upon prosecution for a crime, the actor may be convicted of either the crime charged or an included offense, but not both.  * * * *

In my opinion the common thread of distinction between "conduct" and "offense" which runs through the Minnesota Criminal Code, as well as the MPC, precludes construing the plain language of rule 17.06, subd. 4(3), Minn.R.Crim.P. to mean something quite different from what it says.

The majority justifies its rewriting of the rule by announcing that the rule addresses only its application with respect to double jeopardy—making it a rule of substantive allowance rather than procedural limitation. It seems to me that that assumption is based on a misconception of the purpose of procedural rules. Certainly, procedural rules are not intended to define a constitutional right or to create an expanded version of a constitutional right. To that extent I agree with the majority and the lower courts that the defendant's argument that Rule 17.06, subd. 4(3), Minn.R.Crim.P. affords additional protection against double jeopardy is without merit. Consequently, I look on double jeopardy as nothing more than a tangential concern here.[3]

It seems to me that when Rule 17.06, subd. 4(3) is viewed as a single strut or prop in the structure formed by the Minnesota Rules of Criminal Procedure and is read in the context of the whole bundle of criminal rules, it becomes apparent that Rule 17.06, subd. 4(3) is a rule of limitation which addresses a concern entirely different from double jeopardy.

Pursuant to Rules 10.01 and 10.04, Minn. R.Crim.P., motions, including a motion to dismiss an indictment, are to be made in writing and served on opposing counsel prior to the omnibus hearing unless the court for good cause shown permits the making and service of a motion at a later time. Rule 11 makes it clear that all pretrial motions and all issues raised at the omnibus hearing are to be determined prior to trial (with, perhaps, the exception of rulings on *Spreigl* evidence). Rule 11.05 provides for amendment of the complaint. Rule 17.01 prescribes prosecution by indictment of any offense punishable by life imprisonment and punishment of "[a]ny other offense defined by state law" by either indictment or complaint. Rule 17.02 sets out the nature and content of indictments and complaints.

Rule 17.05 provides for amendment of indictment or complaint "at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced." Rule 17.06, subd. 2 sets out a nonexclusive list of grounds for dismissal of an indictment or complaint, and Rule 17.06, subd. 4 describes the effect of the determination of a motion to dismiss and sets out with particularity the effect of dismissal for a curable defect.[4]

There is, as we know, no statute of limitations barring prosecution for any degree of murder. Minn.Stat. § 628.26(a) (1992). There are, however, statutory periods of limitation governing the initiation of prosecution

---

**3.** Minnesota has, I believe, gone beyond the double jeopardy law articulated by the United States Supreme Court by legislative mandate. In *State v. Jackson*, 363 N.W.2d 758, 760 (Minn.1985), this court stated that Minn.Stat. § 609.04 "expressly prohibits multiple convictions which might not be prohibited by the Double Jeopardy Clause."

**4.** No mention is made in the rules of the effect of a dismissal for a noncurable defect; neither does the rule describe what constitutes a curable or noncurable defect. It is apparent, however, from the comment to the rule and from case law that the unavailability of sufficient evidence to establish probable cause makes an indictment or complaint noncurably defective. If, however, the prosecutor later discovers evidence which establishes probable cause, the prosecutor may again submit the matter to a grand jury.

for violation of other sections of the Minnesota Criminal Code. Minn.Stat. § 628.26(b)-(h) (1992). For reasons which seem to me both obvious and worthy, these statutory limitations are supplemented by Rule 17.06, subd. 4(3), which provides that when an indictment or complaint has been dismissed for a defect—including dismissal for failure to file a timely complaint pursuant to the time constraints of Rule 4.02, subd. 5(3)—which could be cured by amendment or issuance of a new charging document *"further prosecution for the same offense shall not be barred."* (Emphasis added.) By this provision Minnesota has done by rule what the United States has accomplished by statute. 18 U.S.C. § 3288 (1988) (indictments and information dismissed before period of limitations). That is to say, Rule 17.06, subd. 4(3) stays dismissal and both tolls the statutory limitation period until the prosecution is reinstituted and sets a new time limitation within which prosecution must be reinstituted. The rule gives the prosecutor 7 days after notice of entry of the order granting the motion to dismiss to move to continue the case for the filing of a new or amended indictment or complaint. The rule limits the continuance to not more than 7 days for an amendment or for the filing of a new complaint and to not more than 60 days pending the filing of a new indictment. If the prosecutor fails to meet the time constraints imposed by Rule 17.06, subd. 4(3), then any further prosecution is barred unless the prosecutor has appealed the dismissal or unless the charge is murder and dismissal was granted on the ground of the insufficiency of the evidence before the grand jury. Rule 17.06, subd. 4(3) does not govern a dismissal for an incurable defect. Accordingly, if the dismissal was for insufficiency of the evidence then available to the prosecutor to establish probable cause, reprosecution is permitted if evidence later discovered does establish probable cause.[5] The bar of all further prosecution is raised not by a rule-made form of double jeopardy protection tantamount to acquittal for all crimes and higher degrees of the same crime not contained in the original crime. The bar is raised by the period of limitation spelled out in Rule 17.06, subd. 4(3). *See State v. Serstock,* 402 N.W.2d 514, 520 (Minn.1987); *State v. Viergutz,* 288 N.W.2d 693 (Minn.1980).

As I earlier remarked, the limitation provisions of Rule 17.06, subd. 4(3) are both obvious and worthy. Certainly, there is no reason to foreclose prosecution timely commenced because of some curable defect in the complaint or indictment. The purpose of Rule 17.06, subd. 4(3) is to permit the prosecutor to cure, fix or repair the "curable defect" in the charging document so that the prosecution can be reinstituted.[6] The short time frame set in Rule 17.06, subd. 4(3) seems to me a suitable recognition that the defect in the charging instrument is delaying trial of the charge against the defendant and that the matter should be resolved as soon as is reasonably possible.

Finally, in view of the majority's discussion of prosecutorial vindictiveness, it may not be amiss to comment that in my opinion the conduct of the prosecutor in submitting the matter to a successor grand jury and limiting his instructions to the elements of first-degree murder, but excluding the instructions he had given the original grand jury on the elements of second- and third-degree murder and first- and second-degree manslaughter, could well support an inference of prosecutorial vindictiveness. That determination, however, is one of fact to be found by the district judge, whose decision that there was no vindictiveness I do not intend to second-guess. Of course, because I believe Rule 17.06, subd. 4(3) limits the resubmission of the matter to the grand jury to an indictment for third-degree murder, that conclusion eliminates the opportunity for vindictiveness and all

---

**5.** The time for reprosecution after dismissal of the charging instrument for a noncurable defect is limited by the statutory limitation period.

**6.** "Reinstitute" is the term used in the advisory committee's comment to describe the prosecutor's authority with respect to the cure of a curable defect pursuant to Rule 17.06, subd. 4(3).

The term indicates to me that the prosecutor is to reinstitute prosecution on the same offense, curing only what was defective in the original indictment. Perhaps one could characterize the committee's comment as an instruction to proceed according to an old and inelegant adage: Don't fix what ain't broke.

reason for second-guessing the district court judge.

For all the foregoing reasons, I would reverse the court of appeals and remand to the district court for further proceedings pursuant to Rule 17.06, subd. 4(3), Minn. R.Crim.P.

KEITH, Chief Justice (dissenting).

I join in the dissent of Justice Coyne.

GARDEBRING, Justice (dissenting).

I join in the dissent of Justice Coyne.