*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0075**

State of Minnesota,
Respondent,

vs.

Artis Iverson,
Appellant.

**Filed April 6, 2015
Affirmed
Halbrooks, Judge**

Hennepin County District Court
File No. 27-CR-13-4803

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Michael Richardson, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sara J. Euteneuer, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Johnson, Presiding Judge; Halbrooks, Judge; and Larkin, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HALBROOKS**, Judge

Appellant was found guilty of felony violation of an order for protection (OFP),

felony violation of a domestic abuse no contact order (DANCO), and felony stalking in

his second trial after a mistrial. Before this court, appellant argues that (1) the evidence was insufficient to convict him when his stipulation to two previous qualified domestic-violence-related offense convictions and his jury-trial waiver on this enhancement element were inadequate; (2) the evidence was insufficient to support findings that appellant knowingly violated the orders and manifested a purpose or intent to injure; and (3) the district court erred by denying his motion to dismiss the stalking charge based on vindictive prosecution. We affirm.

**FACTS**

On February 12, 2013, an OFP was in place prohibiting appellant Artis Iverson from directly or indirectly contacting his ex-wife, B.H., or their minor child. A DANCO was also in place, which prohibited Iverson from having any contact with B.H. On February 12, Iverson and B.H. were at the courthouse for a hearing on Iverson's motion for parenting time. Before the hearing began, Iverson approached B.H. in the hallway and attempted to engage her in a conversation about her remarriage. B.H. did not respond, and the guardian ad litem and a court employee directed Iverson away from B.H. During the hearing, Iverson asked more questions about B.H.'s remarriage and ultimately withdrew his motion for parenting time.

Based on Iverson's contact with B.H. in the hallway, the state charged Iverson with felony violation of an OFP under Minn. Stat. § 518B.01, subd. 14(a), (d)(1) (2012), and later amended the complaint to add a charge of felony violation of a DANCO under Minn. Stat. § 629.75, subd. 2(d)(1) (2012). Iverson's counsel notified the district court that Iverson would stipulate to his prior convictions that supported the felony

2

enhancement element—that he had two or more qualified domestic-violence-related offense convictions within ten years—and a detailed colloquy followed about the proposed stipulation and related jury-trial waiver. Iverson agreed that he had been convicted of battery of a child in California in 2009 and a gross misdemeanor OFP-violation in Minnesota in 2012. Counsel established on the record that these were qualifying convictions for enhancement of the current charges. Iverson agreed that he wished to stipulate to the two previous convictions to keep that information from the jury. The district court confirmed that Iverson understood his right to require the state to prove each element beyond a reasonable doubt, then the district court accepted the stipulation and jury-trial waiver. The previous-convictions element was withheld from the jury. After a full trial on the remaining elements, the district court determined that the jury was "hopelessly deadlocked" and declared a mistrial on May 17, 2013.

In June, the state amended the complaint to add a charge of pattern of stalking conduct in violation of Minn. Stat. § 609.749, subd. 5(a) (2012). Iverson moved to dismiss the stalking charge, arguing, in part, that the amendment of the complaint was improperly vindictive. The district court[1] denied the motion. Just before the retrial began, the new prosecutor assigned to the case moved to orally amend the "pattern of stalking conduct" charge to "regular enhanced stalking" in violation of Minn. Stat. § 609.749, subd. 4(b) (2012), arguing that "regular enhanced stalking more appropriately fits this particular allegation than a pattern of stalking conduct does. It also . . . would

---

[1] After the first trial ended in a mistrial, the matter was reassigned to another district court judge.

3

lessen the number of past crimes and incidents that I would be seeking to introduce to the jury in this case." The district court granted the oral amendment.

Iverson again requested to stipulate to the enhancement element and the district court accepted the stipulation and Iverson's jury-trial waiver of that element. The jury returned guilty verdicts on all three counts. At sentencing, the district court imposed a sentence on the stalking count only, which carried a presumptive sentence of 28 months stayed. Iverson asked the district court to execute his sentence rather than place him on probation for an extended period of time. The district court granted Iverson's request and committed him to the commissioner of corrections for 28 months. Iverson now appeals.

## D E C I S I O N

### I.

Iverson argues that his stipulation to the enhancement element—that he had been convicted of two or more qualifying domestic-violence-related offenses within ten years of the current offense—and his jury-trial waiver on that element were inadequate, and therefore, the evidence was insufficient to convict him. Because Iverson did not challenge the adequacy of his stipulation or waiver in the district court, our review is for plain error. *See State v. Kuhlmann*, 806 N.W.2d 844, 852 (Minn. 2011) (applying plain-error analysis to jury-trial waiver on stipulated elements); *State v. Hinton*, 702 N.W.2d 278, 281-82 (Minn. App. 2005), *review denied* (Minn. Oct. 26, 2005). Plain error requires a showing of (1) an error, (2) that is plain, and (3) that affects substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). If these three prongs are satisfied,

4

we assess whether to remedy the error to ensure fairness and the integrity of judicial proceedings. *Id.*

**Stipulation Was Inadequate But Did Not Affect Substantial Rights**

We first consider the adequacy of Iverson's stipulation in his second trial and whether the district court erred by accepting it. To obtain a conviction, the state must prove each element of the crime beyond a reasonable doubt. *State v. Auchampach*, 540 N.W.2d 808, 816 (Minn. 1995). But a defendant may stipulate to an element of the offense, "thereby removing the issue from the case." *State v. Berkelman*, 355 N.W.2d 394, 397 (Minn. 1984).

Here, the state had to prove that Iverson had "two or more previous qualified domestic violence-related offense convictions" within ten years of the current offense. Minn. Stat. §§ 518B.01, subd. 14(d)(1), 609.749, subd. 4(b), 629.75, subd. 2(d)(1). In Iverson's retrial, his counsel, who had also represented him in his first trial, informed the district court that he and Iverson had discussed a "stipulation . . . to the . . . elements of the offense, that require proof of the two or more prior convictions within the past ten years." Counsel noted that he and Iverson had "had an opportunity to speak about the stipulation again as we spoke about it during the first trial" and that Iverson wished to "waive his right to have a jury determine . . . those elements of the case to avoid the government . . . letting the jury know that he has convictions." The district court inquired of Iverson if his counsel had accurately stated his wishes, and Iverson responded, "Yes."

Unlike Iverson's thorough stipulation to the enhancement element in his first trial, his stipulation in the second trial was cursory. We conclude that the district court erred in

5

accepting Iverson's stipulation without first establishing that it satisfied proof of the enhancement element. We next consider whether the district court's error in accepting Iverson's stipulation was plain. An error is "plain" if it is clear or obvious under current law, *State v. Strommen*, 648 N.W.2d 681, 688 (Minn. 2002), and an error is clear or obvious if it "contravenes case law, a rule, or a standard of conduct," *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). We conclude that the error here was plain because a stipulation to an element must be sufficiently detailed to support proof of that element beyond a reasonable doubt. *See Auchampach*, 540 N.W.2d at 816 (noting that the state must prove each element beyond a reasonable doubt). An error affects substantial rights if it was prejudicial and affected the outcome of the case. *Griller*, 583 N.W.2d at 741. Iverson bears a "heavy burden" of persuasion on this prong. *Id.* We conclude that the plain-error standard is not met here because the improper stipulation did not affect Iverson's substantial rights.

In Iverson's first trial, the district court made a detailed record of Iverson's stipulation, including the specific qualifying convictions, their factual underpinnings, case numbers, and dates of conviction. The district court confirmed that there was no dispute that Iverson had been convicted or that the convictions were "domestic qualified convictions." Defense counsel then made a record of Iverson's decision to stipulate, and the district court confirmed that Iverson understood that the prosecutor had certified copies of the 2009 and 2012 convictions and that the stipulation would relieve her of the responsibility to prove those convictions.

6

Having reviewed the stipulations made in both trials, we conclude that Iverson understood the enhancement element and the evidence supporting it and that he wished to remove the issue from the jury's consideration. We therefore conclude that the incomplete stipulation in the second trial was not prejudicial. We also conclude that the incomplete stipulation did not affect the outcome of the case. Iverson has never challenged the existence of the convictions. Because the state could have easily proved the existence of the 2009 and 2012 convictions, it was in Iverson's best interests to stipulate to this element. *See Hinton*, 702 N.W.2d at 282 n.1 (stating that "[I]t is typically to the defendant's advantage to avoid presenting the question of prior convictions to the jury.").

**Jury-Trial Waiver Was Proper**

A defendant "may waive a jury trial on the issue of guilt provided the defendant does so personally, in writing or on the record in open court, after being advised by the court of the right to trial by jury, and after having had an opportunity to consult with counsel." Minn. R. Crim. P. 26.01, subd. 1(2)(a). A defendant's waiver of his right to a jury trial on any element of an offense must be knowing, intelligent, and voluntary. *Kuhlmann*, 806 N.W.2d at 848. Iverson argues that his jury-trial waiver on the enhancement element was not knowing or intelligent, and therefore the district court erred by accepting it. Whether a criminal defendant has been denied the right to a jury trial is a constitutional question, which appellate courts review de novo. *State v. Shattuck*, 704 N.W.2d 131, 135 (Minn. 2005).

The district court explained to Iverson that he had the right to have the state prove each element of the charged offenses and that by stipulating that he had two previous convictions within the statutory time frame, he was giving up the right to have the state "prove that beyond a reasonable doubt to the satisfaction of a unanimous jury." We conclude that the district court properly explained the essence of the jury-trial right in this context. *See Kuhlmann*, 806 N.W.2d at 848 (stating that the right to a jury trial includes the right to a jury determination that the defendant is guilty beyond a reasonable doubt of every element of the crime charged). Responding to questions by the district court, Iverson acknowledged that he understood his rights and that he did not want the jury to decide the enhancement element. Iverson's jury-trial waiver on the enhancement element was proper, and the district court did not err in accepting it.

Because we have concluded that Iverson's incomplete stipulation did not affect his substantial rights and that his jury-trial waiver was proper, we conclude that the evidence supporting the enhancement element is sufficient.

## II.

Iverson argues that the evidence is insufficient to prove beyond a reasonable doubt that he "knew that his conduct violated" the OFP and DANCO or that he "manifest[ed] a purpose or intent to injure" B.H. within the meaning of the stalking statute. Under the traditional standard of review of sufficiency of the evidence, appellate courts "review the evidence to determine whether, given the facts in the record and the legitimate inferences that can be drawn from those facts, a jury could reasonably conclude that the defendant was guilty of the offense charged." *State v. Fairbanks*, 842 N.W.2d 297, 306-07 (Minn.

8

2014) (quotation omitted).  But "[i]f a conviction, or a single element of a criminal offense, is based solely on circumstantial evidence," *id.* at 307, appellate courts

> apply a two-step analysis in determining whether [that] circumstantial evidence is sufficient to support a guilty verdict.  The first step is to identify the circumstances proved.  The second step is to determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt.
>
> In identifying the circumstances proved, [appellate courts] assume that the jury resolved any factual disputes in a manner that is consistent with the jury's verdict.  Put differently, [appellate courts] construe conflicting evidence in the light most favorable to the verdict and assume that the jury believed the State's witnesses and disbelieved the defense witnesses.  This is because the jury is in the best position to evaluate the credibility of the evidence, even in cases based on circumstantial evidence.  Under the second step of [the] analysis, [appellate courts] examine independently the reasonableness of the inferences that might be drawn from the circumstances proved.

*State v. Moore*, 846 N.W.2d 83, 88 (Minn. 2014) (quotations and citations omitted).

**Evidence of a Knowing Violation Was Sufficient**

Iverson argues that the circumstances proved do not exclude the reasonable hypothesis that Iverson did not know that his conduct violated the orders.  Iverson testified that he believed that talking to B.H. in the hallway of the courthouse was not a violation of the OFP or DANCO.  But on cross-examination, he agreed that the orders were valid, the orders provided that he was to have no contact with B.H., that he "knew that" and was "aware of that," that there were no exceptions to the prohibition, and that he made contact with B.H. in the hallway of the courthouse.  Iverson's probation agent

9

testified that he had reviewed Iverson's restrictions with him in September 2012. And the OFP itself states, "There are no exceptions to this prohibition of all contact."

By its verdict, the jury rejected Iverson's testimony that he did not know that the orders applied in the courthouse. "A jury's decision to reject a defendant's testimony . . . is entitled to due deference." *State v. Davis*, 656 N.W.2d 900, 905 (Minn. App. 2003), *review denied* (Minn. May 20, 2003). Because the jury rejected Iverson's testimony that he did not know that his contact with B.H. would violate the orders, we conclude that the circumstances proved by the state—that Iverson knew that the orders were valid and prohibited contact with B.H., that there were no exceptions, and that he spoke to B.H. at the courthouse—are "inconsistent with any rational hypothesis except that" Iverson knowingly violated the orders. *See Moore*, 846 N.W.2d at 88 (quotation omitted).

**Evidence that Iverson Manifested a Purpose or Intent to Injure Was Sufficient**

Iverson argues that the circumstances proved do not exclude a rational hypothesis that Iverson did not intend to injure B.H. with his "simple, innocuous question as he was walking into court." His argument focuses in large part on his assertion that he did not actually intend to injure B.H. But the question for the jury was whether Iverson had "manifest[ed] a purpose or intent to injure" B.H. by violating the orders, not whether he had subjectively intended to harm her. Minn. Stat. § 609.749, subd. 2(1) (2012); *see also* Minn. Stat. § 609.749, subd. 1a (2012) ("[T]he state is not required to prove that the actor intended to cause the victim to feel frightened, threatened, oppressed, persecuted, or intimidated.").

Here, B.H. testified that when she arrived outside the courtroom, she heard Iverson in a conference room, yelling and upset. Iverson left the conference room, approached B.H., and "started yelling at [her]" about her remarriage. B.H. testified that she became "terrified" because of their history,[2] started crying, and collapsed in a conference room when Iverson walked away. B.H.'s family-law attorney testified that when Iverson approached, he "turned quickly and looked right at [B.H.]" and that his tone was "[a]ngry, quick, unsettling, just kind of startling because we were just so close." She further testified that B.H. "immediately started trembling" and crying and "just kind of broke down." The guardian ad litem also testified that B.H. had tears in her eyes and "looked somewhat distraught" after the incident.

A defendant's conduct may be viewed in the context of his relationship with the victim, *State v. Franks*, 765 N.W.2d 68, 75 (Minn. 2009), and a victim's reaction to that conduct is circumstantial evidence that is relevant to intent, *State v. Schweppe*, 306 Minn. 395, 401, 237 N.W.2d 609, 614 (1975). Here, Iverson and B.H. have a history of domestic violence resulting in a series of court orders barring Iverson from contacting B.H. In this context and in light of the testimony by three witnesses about Iverson's conduct and its effect on B.H., we conclude that the evidence was sufficient to support the jury's determination that Iverson manifested a purpose or intent to injure B.H.'s rights by talking to her.

---

[2] Although evidence of Iverson's previous convictions was not presented to the jury, B.H. did testify about their history of violence, the issuance of protective orders, and Iverson's previous violations of orders.

11

**III.**

Iverson argues that the district court erred by denying his motion to dismiss the stalking count based on vindictive prosecution when the charge was added after the first trial ended in a mistrial. "Typically, a presumption of vindictiveness arises when a defendant's exercise of a procedural right causes a complete retrial after he had been once tried and convicted." *Cuypers v. State*, 711 N.W.2d 100, 104 (Minn. 2006) (quotation omitted). A presumption of vindictive prosecution also applies when the state amends the complaint after a mistrial to "increase the severity of the originally charged offense." *State v. Alexander*, 290 N.W.2d 745, 749 (Minn. 1980). But when the state adds a new and distinct count to the complaint after a mistrial, there is no presumption of vindictiveness, rather, a vindictiveness-in-fact standard applies. *Id.* Similarly, there is no presumption of vindictiveness when the state amends the charges after a defendant invokes common pretrial procedural rights, such as filing suppression motions or challenging the sufficiency of an indictment. *State v. Pettee*, 538 N.W.2d 126, 132 (Minn. 1995) ("A mere opportunity for vindictiveness is insufficient to justify imposing an inflexible prophylactic presumption.").

In *Alexander*, after a mistrial, the state amended the complaint to add new charges based on the same series of underlying events. 290 N.W.2d at 749. Our supreme court concluded that the state did not increase the severity of the originally charged offense by its amendment, that a vindictiveness-in-fact standard therefore applied, and that "there is no possibility that vindictiveness was involved in the decision to amend the complaint." *Id.* Here, as in *Alexander*, the first trial ended in a mistrial and a different prosecutor

12

handled the second trial. The basis of Iverson's vindictive-prosecution claim is that the state amended the complaint to add the stalking charge because of his challenge to the state's pretrial motion to introduce relationship evidence. This evidentiary challenge is not the sort of exercise of procedural rights that supports a presumption of vindictive prosecution. *See United States v. Goodwin*, 457 U.S. 368, 381, 102 S. Ct. 2485, 2493 (1982) ("[A] defendant before trial is expected to invoke procedural rights that inevitably impose some 'burden' on the prosecutor. . . . It is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter.").

Absent a presumption of vindictive prosecution, a vindictiveness-in-fact standard applies, and the defendant bears the burden of proof. *Pettee*, 538 N.W.2d at 133. Because Iverson did not argue vindictiveness in fact to the district court, we need not reach this argument. *See Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996). Nevertheless, our review of the record leads us to conclude that Iverson could not sustain his burden of showing that the stalking prosecution was driven by vindictiveness in fact.

**Affirmed.**