**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A14-1482**

State of Minnesota,
Respondent,

vs.

Douglas John Olson,
Appellant.

**Filed July 13, 2015**
**Reversed**
**Ross, Judge**

Hennepin County District Court
File No. 27-CR-14-3196

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Susan L. Segal, Minneapolis City Attorney, Paula J. Kruchowski, Assistant City Attorney, Minneapolis, Minnesota (for respondent)

John L. Lucas, Minneapolis, Minnesota (for appellant)

Considered and decided by Peterson, Presiding Judge; Ross, Judge; and Johnson, Judge.

**S Y L L A B U S**

A prosecutor abuses the state's voluntary dismissal authority under rule 30.01 of the Minnesota Rules of Criminal Procedure and engages in an act of bad faith by dismissing and refiling a criminal complaint to circumvent the district court's refusal to continue the criminal trial.

**ROSS**, Judge

The state charged Douglas Olson with driving while impaired. The prosecutor was unprepared to try the case on the date scheduled for trial because the state's only witness—the arresting trooper—was voluntarily absent. The prosecutor moved to continue the trial to a later date, warning that if the district court denied the motion, the state would "take action, as it deems fit," to simply dismiss the charge under criminal procedural rule 30.01 and refile it as a new case. The district court denied the state's continuance motion and the state dismissed and refiled the charge. Olson moved to dismiss the refiled charge, and the district court denied the motion because it reasoned that the state did not dismiss the original complaint in bad faith. Because a prosecutor does not act in good faith under rule 30.01 when he dismisses a criminal charge merely to refile it, effectively nullifying the district court's refusal to grant his motion to continue, the district court erroneously concluded that the prosecutor acted in good faith. We therefore reverse.

## FACTS

In June 2013 a state trooper arrested Douglas Olson for impaired driving and the state tab charged Olson. The district court scheduled trial for January 23, 2014. The afternoon before the trial date the prosecutor tried to contact the trooper and learned that the trooper had left the state for a job interview and would not be back in time to testify. The prosecutor did not immediately notify the district court.

The district court called Olson's trial the next morning. The prosecutor then announced that the trooper—the state's only intended witness—had left town for a job interview. He asked the district court to continue the trial to a later date. Olson's attorney urged the district court to deny the motion and dismiss the charge. Otherwise, the attorney predicted, "the prosecutor will exercise a power that's unilateral in dismissing this case" and refile the charge, in "essence . . . granting their own continuance." The prosecutor confirmed Olson's prediction, announcing, "[T]he state will take action, as it deems fit. . . . If the motion for a continuance is denied, it is the state's intention to dismiss this case and to recharge it."

The district court refused to continue the trial because the motion lacked sufficient cause, and the prosecutor then dismissed the charge and refiled it within two weeks. The refiled case went to a different district court judge. Olson moved the district court to dismiss the charge because the prosecutor had acted in bad faith by dismissing and refiling it to circumvent the district court's decision to deny the state's request for a continuance. The district court denied Olson's motion to dismiss because it believed the prosecutor did not act in bad faith in light of the absent witness.

The parties proceeded with a stipulated-facts trial, allowing Olson to preserve his challenge to the district court's refusal to dismiss the refiled criminal complaint. The district court found Olson guilty of fourth-degree impaired driving.

Olson appeals the district court's refusal to dismiss the refiled complaint.

## ISSUE

Did the district court abuse its discretion by denying Olson's motion to dismiss?

## ANALYSIS

Olson argues that the district court allowed the prosecutor to misuse rule 30.01 of the Minnesota Rules of Criminal Procedure by dismissing and then refiling the charge to circumvent the district court's denial of the state's motion to continue. We interpret the procedural rule de novo. *State v. Barrett*, 694 N.W.2d 783, 785 (Minn. 2005). In doing so, we look to the words of the rule and consider its purpose. *State v. Dahlin*, 753 N.W.2d 300, 305 (Minn. 2008).

We begin with the rule's relevant language: "The prosecutor may dismiss a complaint or tab charge without the court's approval, and may dismiss an indictment with the court's approval. The prosecutor must state the reasons for the dismissal in writing or on the record." Minn. R. Crim. P. 30.01. The prosecutor's reasons are important to how the district court treats the dismissal, because this court and the supreme court have interpreted the rule as allowing the prosecutor to refile a complaint that the state voluntarily dismissed only if the prosecutor dismissed the complaint in good faith. *State v. Couture*, 587 N.W.2d 849, 853 (Minn. App. 1999), *review denied* (Minn. Apr. 20, 1999); *cf. State v. Pettee*, 538 N.W.2d 126, 131 n.5 (Minn. 1995) (observing good-faith requirement for refiled indictments).

A district court supervising a prosecutor's use of this rule must therefore consider the prosecutor's actions in light of this good-faith standard. The prosecutor indicated on the record the state's reason for dismissing Olson's charge. After Olson's counsel warned that the state would use a dismiss-and-refile tactic to attempt to bypass the district court's denial of the state's pending motion to continue the trial, the prosecutor confirmed this,

4

declaring, "[T]he state will take action, as it deems fit," in response to the district court's decision on the state's continuance motion. And he left no room for misunderstanding, adding that "[i]f the motion for a continuance is denied, it is the state's intention to dismiss this case and to recharge it." In so many words, the prosecutor declared that either the district court must yield to the state's unsupported motion for continuance or the state would effectively enter its own order for continuance by way of a rule-30.01 dismissal-and-refiling. Our decision in this appeal therefore turns on whether a prosecutor's use of the rule to unilaterally dismiss and refile a criminal complaint to effect a do-it-yourself continuance order – essentially nullifying the district court's considered decision to deny the state a continuance – is an act of good faith.

We do not interpret and apply rule 30.01 in a vacuum. The rule has a federal predecessor, which is rule 48(a) of the Federal Rules of Criminal Procedure. *See* Minn. R. Crim. P. 30 cmt. (citing caselaw that connects the federal and state rules). And we have been specifically taught that, because "Rule 30.01 essentially adopts the provisions of Rule 48(a), Federal Rules of Criminal Procedure," caselaw interpreting federal rule 48(a) informs the interpretation of state rule 30.01. *State v. Aubol*, 309 Minn. 323, 326, 244 N.W.2d 636, 638 (1976) (footnote omitted). So we can look to the federal rule as we consider whether the prosecutor's purpose here is a good-faith use of rule 30.01, as the district court concluded. Both the general principles that underlie the rule and the specific consideration of courts that have addressed it inform us that we must reject the state's implicit position that the prosecutor has unfettered authority to dismiss and refile a complaint.

The federal rule from which our state rule was adopted reflects the separation of executive and judicial powers. Before the federal rule was adopted in 1944, prosecutors could dismiss charges at will. *See* Fed. R. Crim. P. 48(a) Notes of Advisory Committee on Rules (observing that the rule "will change existing law" that allowed the "prosecutor [to] enter a *nolle prosequi* in his discretion, without any action by the court"). Citing federal rule 48(a), among other sources, future Chief Justice Burger explained for the circuit court, "Few subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings, or what precise charge shall be made, or whether to dismiss a proceeding once brought." *Newman v. United States*, 382 F.2d 479, 480 (D.C. Cir. 1967). Given the prosecutor's broad authority as a member of the executive branch, "as an incident of the constitutional separation of powers, . . . the courts are not to interfere with the free exercise of the discretionary power of [prosecutors] in their control over criminal prosecutions." *Id*. at 481. Judge Burger then gave an example demonstrating how a prosecutor exercises this discretionary control and the reason courts generally do not encroach in those decisions:

> [The prosecutor] is expected to exercise discretion and common sense to the end that if, for example, one is a young first offender and the other older, with a criminal record, or one played a lesser and the other a dominant role, one the instigator and the other a follower, the prosecutor can and should take such factors into account; no court has any jurisdiction to inquire into or review his decision.

*Id*. at 482. Put another way, the executive branch's absolute discretion not to charge would be illusory if it did not also have the authority to dismiss a charge.

6

Given this background, we can see that federal rule 48(a) and, by extension, state rule 30.01, have internal opposing features. On one hand, each embodies the prosecutor's historic discretion to dismiss a charge, but on the other, each invites some judicial oversight into that process. This oversight is justified by the fact that, despite a prosecutor's significant discretion as an executive branch officer, the executive branch has no discretion to cross into judicial branch authority. The state supreme court recognized this principle long ago, even before the adoption of either the federal or state rule. That is, the district court has the authority to police the strategic attempts by prosecutors to undermine the inherent case-management authority that falls exclusively within the court's province: "The county attorney's conduct of criminal prosecutions is under the control of the court. Continuances, *nolle prosequis*, and dismissals of causes must be sanctioned by the court." *State v. Cooper*, 147 Minn. 272, 276, 180 N.W. 99, 101 (1920). In other words, more than 10 years before the federal courts adopted rule 48 and half a century before Minnesota adopted rule 30.01, the supreme court had already recognized that a Minnesota prosecutor could not, without court approval, even enter a *nolle prosequi* or dismiss a criminal action, let alone unilaterally effect a continuance. That is, despite the general authority of the executive branch and the broad discretion afforded to prosecutors in charging and dismissal decisions, in Minnesota prosecutors historically have lacked unfettered power to effect a continuance or dismiss a charge. It is evident then that the prosecutor's stated purpose here to use the dismiss-and-refile tactic to effect a continuance for the state (and to undo the district court's refusal to order the

7

continuance), infringes the authority historically vested in the district court and unavailable to prosecutors in Minnesota before rule 30.01 was adopted in 1975.

We have no reason to conclude that rule 30.01 has removed this fence between the prosecutor's discretion to dismiss and the court's discretion to deny the prosecutor a continuance. Rather, the rule, along with the supreme court's recognition in *Pettee* that a prosecutor cannot refile an indictment that is dismissed under rule 30.01 in bad faith, embody the same principles.

Federal caselaw also embodies these principles. Caselaw cited approvingly by our state supreme court informs us that the prosecutor's reason for dismissing under rule 30.01 here establishes that he was not applying the dismissal rule in good faith. In *United States v. Hayden*, the Ninth Circuit interpreted federal rule 48(a) and observed, "Of course, had the district judge concluded and specifically found that the government utilized the Rule 48(a) motion as a pretext to bypass his denial of the continuance, *a clear act of bad faith*, he could have reversed his earlier Rule 48(a) ruling." 860 F.2d 1483, 1488–89 (9th Cir. 1988) (emphasis added). Our state supreme court cited *Hayden* approvingly for the proposition that rule 30.01 "allows the state, provided it is not acting in bad faith, to voluntarily dismiss an indictment without prejudice and later to reindict based on the same or similar charges." *Pettee*, 538 N.W.2d at 131 n.5. We in turn have cited *Pettee*'s circumscription of bad-faith refilings of indictments to apply to charges refiled by complaint as well. *Couture*, 587 N.W.2d at 853. Under this caselaw, we are convinced that a prosecutor's plan to use the rule as a dismiss-and-refile device to

8

circumvent a district court's refusal to grant the prosecutor's motion to continue is "a clear act of bad faith."

Our holding is consistent with the district court's related statutory authority. The statutes allow for a continuance to be effected only "by the court," not by the parties. Minn. Stat. § 631.02 (2012). The parties have a limited role and a significant burden when it comes to efforts to continue: "either the prosecution or defense" may move the court for a continuance, and the moving party "must show sufficient cause for the continuance." *Id*. And of course the district court has the authority to deny the prosecutor's motion to continue. *See State v. Stroud*, 459 N.W.2d 332, 335 (Minn. App. 1990). This authority and the entire arrangement is almost useless under the state's theory that a prosecutor can use the rule at will to obtain a continuance denied by the court. How could district court judges effectively manage their trial calendars if, in any criminal case and at any pretrial moment of the prosecutor's choosing, the prosecutor could cite rule 30.01 to fashion the state's own continuance? What is the point of a statute that requires the moving party to show "sufficient cause" for a continuance if one of the parties can use rule 30.01 to obtain a continuance without that showing? What is the significance of the district court's discretion to deny a motion to continue if the court no longer possesses the authority to prevent the state from unilaterally granting itself a continuance? To allow the state to use the rule for the express purpose of evading the district court's continuance denial would erroneously suggest that rule 30.01 and its federal counterpart were crafted to give only the prosecutor the means to obtain a continuance at will, leaving the defendant alone to submit to the district court's calendar-management authority.

9

We think instead that rule 30.01 expressly requires the prosecutor to state on the record the reasons for dismissal so that the district court can continue to exercise its historic, inherent authority to reject bad-faith, reissued complaints. *Cf. State v. Hart*, 723 N.W.2d 254, 259 (Minn. 2006) (restating the district court's inherent authority to dismiss a case in the interests of justice). And we are satisfied that a prosecutor's attempt to side-step the district court's authority to reject insufficient continuance motions constitutes a bad-faith reason for dismissal under rule 30.01. We therefore hold that when a prosecutor voluntarily dismisses a complaint to initiate a dismiss-and-refile tactic and to circumvent the district court's denial of a continuance motion, the prosecutor acts in bad faith in both the dismissal and the refiling.

We focus again on this case. The prosecutor, the defendant, and the defense attorney were all present in the courtroom after the district court called Olson's case for trial. Everyone appeared at the appointed time except the state's only witness, whom the prosecutor had not apparently subpoenaed to appear and who had left the state voluntarily long after the district court had informed the parties of the scheduled trial date. No one challenged the correctness of the district court's decision that the state did not show substantial cause for its requested continuance, even though the district court might have decided that motion differently in its discretion.

The prosecutor's stated reason for the dismissal could not have been clearer. Again, he said, "If the motion for a continuance is denied, it is the state's intention to dismiss this case and to recharge it." He declared flatly, "[T]he state will take action, as it deems fit." The district court refused to dismiss the refiled charge notwithstanding the

10

prosecutor's stated purpose of thwarting the court's continuance order, albeit an order issued by a different district court judge. Although the district court correctly explained that the state "may later recharge [when a complaint was dismissed under Rule 30.01] . . . provided it is not acting in bad faith," it failed to recognize that the prosecutor's plainly stated purpose to override the court's uncontested continuance decision by executive action is never an act of good faith. The court therefore erroneously concluded that "the state did not act in bad faith." Because the state may not refile charges that are dismissed in bad faith under rule 30.01, the district court abused its discretion by refusing to dismiss the refiled charge here.

## D E C I S I O N

The state acted in bad faith when it used its dismissal power under rule 30.01 as a dismiss-and-refile tactic to circumvent the district court's decision denying the state's pretrial motion to continue the criminal trial. The district court therefore abused its discretion by denying Olson's motion to dismiss the complaint filed under the state's bad-faith use of rule 30.01. We reverse Olson's conviction.

**Reversed.**

11