**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0279**

State of Minnesota,
Respondent,

vs.

Rafael Alfonso Banks,
Appellant.

**Filed February 8, 2016
Affirmed
Chutich, Judge**

Hennepin County District Court
File No. 27-CR-14-12873

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Linda M. Freyer, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Leslie J. Rosenberg, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Chutich, Presiding Judge; Ross, Judge; and Hooten, Judge.

## S Y L L A B U S

1. Rule 30.02 of the Minnesota Rules of Criminal Procedure, which permits the district court to dismiss a complaint if the prosecutor has unnecessarily delayed bringing the defendant to trial, applies to claims of pre-charge delay.

2. To warrant dismissal under rule 30.02 of the Minnesota Rules of Criminal Procedure on a claim of unnecessary pre-charge delay, a defendant must demonstrate that he has suffered prejudice by the delay.

**O P I N I O N**

**CHUTICH**, Judge

Appellant Rafael Alfonso Banks appeals his conviction for violation of a domestic-abuse no-contact order. *See* Minn. Stat. § 629.75, subd. 2(c) (2012). He argues that (1) the district court erred in denying his motion to dismiss the complaint; (2) the district court improperly permitted the state to elicit hearsay evidence, or alternatively, that his trial counsel's failure to object to its admission denied him effective assistance of counsel; (3) the evidence was insufficient to sustain his conviction as a matter of law; and (4) the prosecutor committed prejudicial misconduct, entitling him to a new trial. Because we conclude that the district court did not abuse its discretion in denying Banks's motion to dismiss and that the remainder of his claims lack merit or do not raise concerns that implicate his right to a fair trial, we affirm his conviction.

**FACTS**

This case arises from allegations that appellant Rafael Alfonso Banks violated a domestic-abuse no-contact order. The state charged Banks with domestic assault by strangulation[1] after he allegedly strangled A.M.P. on March 17, 2013. Three days later, at his first appearance on this charge, the district court issued a domestic-abuse no-contact order, which prohibited all contact between Banks and A.M.P. The order was to remain in effect until the disposition of the criminal case or until further order or modification.

---

[1] The state later amended the charge to third-degree assault.

2

Also on March 20, 2013, A.M.P. independently obtained an ex parte permanent order for protection against Banks. Approximately one month later, however, she requested that the order for protection be dropped, and the district court vacated it. The dismissal order specifically stated that it would "not affect any other No-Contact Orders including the Domestic Abuse No-Contact Order in [Banks's domestic-assault case]."

On June 9, 2013, police arrested Banks for having contact with A.M.P. That evening, Officer Troy Okerlund began checking license plates in the parking lot of a park to discover any active warrants or driving violations. One license plate appeared as registered to A.M.P. in Minnesota but showed that she had a Wisconsin driver's license. Okerlund's information from the Department of Vehicle Services provided no photo of A.M.P. An attachment to A.M.P.'s Minnesota registration showed that she had an active order for protection against Banks.[2]

Having just seen a man and a woman with a child in a stroller leave the car registered to A.M.P., Okerlund's curiosity was piqued. Because he identified the man leaving the car as Banks, he waited for them to return so he could investigate whether the woman with Banks was A.M.P., the subject of the order for protection.

Okerlund approached the couple when they returned, and he addressed the woman by A.M.P.'s first name to confirm her identity. She did not correct him. Once Okerlund informed them of the active order for protection prohibiting their contact, Banks hung his

---

[2] The March 20 order for protection had been vacated when Okerlund discovered it. Okerlund's efforts to verify the order for protection showed that it remained in effect, however.

3

head and responded "I thought that got dropped." Based on Banks's reaction, Okerlund arrested him for violating the order for protection.

The state charged Banks with violating the March 20 order for protection but dismissed the charge on June 17, 2013, citing "unavailability of admissible testimony." Neither Okerlund nor the state learned that the March 20 order for protection had been vacated until *after* the charge was dismissed. The domestic-abuse no-contact order, however, remained in effect from March 20 until June 17.[3]

On May 7, 2014, the state recharged Banks for the June 9, 2013 encounter in the park, this time for violating the March 20 domestic-abuse no-contact order. Banks moved to dismiss the charge, which the district court denied.

At trial, Banks testified that, although he was aware of the March 20 *order for protection*, he was unaware of the March 20 *domestic-abuse no-contact order*. He confirmed that he had been with his daughter in the park that day but insisted that the woman with him was J.S., his then-girlfriend, not A.M.P., the child's mother. He described A.M.P. as five-feet-eleven-inches tall, "Caucasian," 154 pounds, with blue eyes and brown hair. He testified that J.S., however, is five-feet-five-inches tall, "Caucasian," 156 pounds, with green eyes and red hair. He additionally explained that he had been driving the vehicle registered to A.M.P. because he had arranged with A.M.P. to assume the payments on her car so that he could have exclusive use of it. According to Banks, Okerlund rejected his explanation, including his assertion that the woman was not A.M.P.

---

[3] The state dismissed the charges giving rise to the March 20 domestic abuse no-contact order on June 17, 2013, eight days after Banks's arrest.

4

Okerlund, by contrast, testified that, although Banks insisted that the order for protection had been dropped, neither Banks nor A.M.P. had documentation to confirm this assertion. Okerlund further testified that neither suggested that the woman was not A.M.P. Additionally, Okerlund testified that the woman's identity was never in question because she identified herself for Okerlund's report, he identified the child as the daughter of A.M.P. and Banks, and they discussed A.M.P.'s need to obtain a Minnesota driver's license. Following a one-day trial, the jury convicted Banks.

After his conviction, Banks moved for a new trial, asserting that he had been deprived of a fair trial, he had new evidence,[4] and the verdict was against the weight of the evidence. The district court rejected Banks's arguments, denied the motion for a new trial, and sentenced him to 365 days in the workhouse, with 362 days stayed for two years, subject to conditions of probation. Banks appeals.

## ISSUES

**I.** Did the district court abuse its discretion by refusing to dismiss the complaint?

**II.** Did the district court commit plain error by permitting the state to introduce hearsay testimony?

**III.** Was the evidence sufficient as a matter of law to sustain the conviction?

**IV.** Did the prosecutor commit prejudicial misconduct warranting a new trial?

---

[4] The new evidence was an affidavit from a woman—not J.S.—stating that *she* had been with Banks in the park when he was arrested.

## ANALYSIS

### I. Denial of Banks's Motion to Dismiss the Complaint

Banks argues that the district court should have dismissed the proceedings under Minnesota Rule of Criminal Procedure 30.02 because the prosecutor waited eleven months before recharging him with violating the domestic abuse no-contact order. He contends that rule 30.02 applies to this unnecessary pre-trial delay even when that delay causes no prejudice to a defendant.

We agree with Banks that rule 30.02 applies to pre-trial delay, as well as to post-charging delay. But because the rule requires a defendant to show prejudice to his case before dismissal is warranted, and Banks failed to do so, the district court properly denied his motion to dismiss the refiled charge.

The Minnesota Rules of Criminal Procedure provide that the district court "*may* dismiss the complaint . . . if the prosecutor has unnecessarily delayed bringing the defendant to trial." Minn. R. Crim. P. 30.02 (emphasis added). We interpret rules of criminal procedure "in accordance with the rules of grammar and give words and phrases their common and approved usage." *Dereje v. State*, 837 N.W.2d 714, 720 (Minn. 2013). Because rule 30.02 uses "may," it gives the district court discretion to dismiss the complaint. *See State v. Gowan*, 298 Minn. 172, 177, 214 N.W.2d 228, 231 (1973) (noting that "may" is "discretionary in nature").

A dismissal of an earlier complaint does not preclude a prosecutor from recharging an offender, however. *See State v. Streiff*, 673 N.W.2d 831, 838 (Minn. 2004) (discussing dismissal by the court under Minn. Stat. § 631.21 (2002)). In particular, a prosecutor's

6

dismissal under rule 30.01 of the Minnesota Rules of Criminal procedure is without prejudice. *State v. Couture*, 587 N.W.2d 849, 853 (Minn. App. 1999), *review denied* (Minn. Apr. 20, 1999). Thus, "provided it is not acting in bad faith," the state may later recharge based on the same violation. *Id.* (quoting *State v. Pette*, 538 N.W.2d 126, 131 n.5 (Minn. 1995)); *see also State v. Olson*, 867 N.W.2d 258 (Minn. App. 2015) (holding that a prosecutor acts in bad faith by dismissing a complaint to circumvent denial of a continuance), *review granted* (Minn. Sept. 29, 2015).

This court reviews the district court's exercise of discretion to deny a motion to dismiss for an abuse of that discretion. *Olson*, 867 N.W.2d at 260–64. We review the district court's interpretation of procedural rules de novo. *State v. Coles*, 862 N.W.2d 477, 479 (Minn. 2015). This court will sustain the district court's factual findings unless they are clearly erroneous. *See State v. Underdahl*, 767 N.W.2d 677, 686 (Minn. 2009) (considering whether district court findings in pre-trial order were clearly erroneous).

In seeking affirmance of the district court's denial of the motion to dismiss, the state contends that rule 30.02 does not encompass a claim of pre-charge delay, citing the express language of rule 30.02's federal counterpart in support of this assertion.[5] It also maintains that time limits for bringing criminal charges are set by statutes of limitations.

---

[5] Fed. R. Crim. P. 48 (b) provides: "[t]he court may dismiss an indictment, information, or complaint if unnecessary delay occurs in: (1) presenting a charge to a grand jury; (2) filing an information against a defendant; or (3) bringing the defendant to trial."

To date, no Minnesota case has specifically decided whether the rule permits the district court to dismiss a complaint for unnecessary *pre-charge* delay.[6] But because the charging process is integral to "bringing a defendant to trial," the plain language of the rule contemplates dismissal for pre-charge delay. Moreover, if rule 30.02 is interpreted to authorize dismissal only in situations of *unnecessary pretrial* delay, where a specific defendant has suffered prejudice, it does not conflict with the purpose of the statutes of limitations, which set a broad and general cut-off, after which no charges may be brought for a specific crime, no matter the individual circumstances of the case.

Although the state argues that rule 30.02 should apply only to claims of speedy-trial violations, we believe that the rule complements rule 11.09 of the Minnesota Rules of Criminal Procedure,[7] which governs time limits for beginning trial once a defendant has been charged. These two rules serve distinct functions: rule 11.09 expressly provides for

---

[6] In *State v. Haugen*, this court addressed the trial court's dismissal under rule 30.02. 382 N.W.2d 297 (Minn. App. 1986). There, the city attorney issued a complaint for careless driving over 30 days after the defendant received a traffic citation for the offense, causing the district court to dismiss the complaint at the defendant's plea hearing on other charges. *Id.* at 298. Nearly six months later, the city attorney recharged the defendant with careless driving for the same conduct, and the trial court again dismissed for untimely prosecution. *Id.* at 298–99. This court upheld the dismissal, noting the city attorney's failure to comply with rule 17.06, subdivision 4, of the Minnesota Rules of Criminal Procedure. *Id.* at 299. Though this court cited rule 30.02 in affirming the district court, *id.*, its reference to the rule was not necessary to the holding; thus, *Haugen* does not resolve the instant case. *See Dahlin v. Kroening*, 784 N.W.2d 406, 410 (Minn. App. 2010) (noting that the court's expressions that go beyond the facts are dicta and not binding in subsequent cases), *aff'd*, 796 N.W.2d 503 (Minn. 2011).

[7] That rule provides, in relevant part, "[u]nless exigent circumstances exist, if trial does not start within 120 days from the date the plea other than guilty is entered and the demand is made, the defendant must be released under any nonmonetary conditions the court orders under Rule 6.01, subd. 1." Minn. R. Crim. P. 11.09.

a defendant's *release* upon failure to timely commence trial, while rule 30.02 permits the district court to *dismiss* a complaint. Moreover, a comment to rule 48(b) of the Federal Rules of Criminal Procedure, rule 30.02's federal counterpart, supports our interpretation: "[t]he Committee considered the relationship between Rule 48(b) and the Speedy Trial Act. Rule 48(b), of course, operates independently from the Act." Fed. R. Crim. P. 48 2002 amend. cmt. (citations omitted). Although we recognize that rule 48(b) of the Federal Rules of Criminal Procedure expressly applies to pre-charge delay, to interpret rule 30.02 broadly to include pre-charge-delay claims is consistent with the thrust of rule 48(b). *See* Fed. R. Crim. P. 48 1944 advisory comm. note to subd. (b) ("This rule is a restatement of the inherent power of the court to dismiss a case *for want of prosecution*." (emphasis added)). Given these considerations, we hold that rule 30.02 does not apply only to speedy-trial violations but also permits the district court to dismiss a complaint for unnecessary pre-charge delay.

We disagree, however, with Banks's next contention that dismissal under rule 30.02 is proper even without a showing of prejudice, provided that the delay has simply been unnecessary. This proposition runs counter to supreme court language concerning the same provision. *See State v. Hart*, 723 N.W.2d 254, 257 n.5 (Minn. 2006) ("We have required a showing of prejudice for a dismissal under [rule 30.02]."). Although the only supreme court explications of rule 30.02 concern speedy-trial violations, to require prejudice in the speedy-trial context but not in the context of pre-charge delay would be inconsistent. Accordingly, we hold that prejudice is required to justify dismissal under rule 30.02 for unnecessary pre-charge delay.

9

With these principles in mind, we turn to Banks's motion to dismiss. First, the state's earlier dismissal under rule 30.01 was without prejudice, and the district court found that the state had not acted in bad faith. Sufficient evidence supports this finding.

Next, Banks must show prejudice to justify dismissal under rule 30.02 for unnecessary pre-charge delay. Simply averring delay does not establish prejudice, and we will not infer prejudice solely because the state does not proceed with charging immediately after probable cause is established. *See State v. Lussier*, 695 N.W.2d 651, 655 (Minn. App. 2005), *review denied* (Minn. July 19, 2005).

The district court found no prejudice, noting that Banks was not incarcerated during the eleven-month period between the first dismissal and the initiation of the second charge, he did not show that he experienced any anxiety or concern over the possibility of renewed charges, and he did not show that his defense would be impaired by the delay. These factual findings are well supported by the record. Accordingly, the district court acted within its discretion when it denied Banks's motion to dismiss.

Banks further asserts that his right to due process was violated by the eleven-month delay. Because Banks did not raise this argument in the district court, we will not consider it. *State v. Williams*, 794 N.W.2d 867, 874 (Minn. 2011). Appellate courts "ordinarily do not consider issues raised for the first time on appeal, even when those issues are constitutional questions of criminal procedure." *Id.*

## II.    Admission of Hearsay Evidence

Banks argues that Okerlund's testimony about the woman's answers to the officer's questions at the park was inadmissible hearsay. In the alternative, he argues that his trial

10

counsel's failure to object to its admission denied him effective assistance of counsel because, without the inadmissible hearsay evidence, the jury would not have been able to convict him. His arguments lack merit.

In general, this court "will not consider a challenge to the admission of evidence unless . . . a timely objection or motion to strike appears of record." *State v. Rossberg*, 851 N.W.2d 609, 617–18 (Minn. 2014) (quoting Minn. R. Evid. 103(a)(1)) (quotation marks omitted). Moreover, it is particularly critical for counsel to object to potential hearsay evidence at trial because of the "complexity and subtlety of the operation of the hearsay rule and its exceptions," so that a "full discussion of admissibility" can be conducted at trial. *State v. Manthey,* 711 N.W.2d 498, 504 (Minn. 2006). Without an objection at trial, "the state [is] not given the opportunity to establish that some or all of the statements were admissible under one of the numerous exceptions to the hearsay rule." *Id.*

At trial, Banks's counsel belatedly objected to the allegedly inadmissible hearsay testimony only after Okerlund had already testified about it. Because he did not timely object, he failed to preserve the issue for appeal. *See Rossberg*, 851 N.W.2d at 617–18.

Even though Banks failed to timely object and preserve his challenge for appeal, this court may still "take notice of plain errors affecting substantial rights." *Id.* Plain error is (1) error, (2) that is plain, and (3) that affects substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). An error affects substantial rights "if there is a reasonable likelihood that it substantially affected the verdict." *Rossberg*, 851 N.W.2d at 618 (quotations omitted).

11

Here, we need not address whether the district court plainly erred because Banks cannot show that admission of the testimony affected his substantial rights. *State v. Goelz*, 743 N.W.2d 249, 258 (Minn. 2007) ("If a defendant fails to establish that the claimed error affected his substantial rights, we need not consider the other factors."). Okerlund's sworn testimony emphasizing his own observations and actions—that the woman confirmed her identity by responding to him, that he verified her information for his report, that she never corrected his presumption of her identity, and that she confirmed that she owned the car— independently substantiated the identification of the woman as A.M.P. Because alternative means that did not involve hearsay existed to establish the woman's identity, we conclude that the contested testimony did not affect the outcome of the case. Accordingly, Banks has not met his "heavy burden" to prove that the error affected his substantial rights, precluding relief under the plain-error standard. *See State v. Tscheu*, 758 N.W.2d 849, 864 (Minn. 2008) (quoting *Griller*, 583 N.W.2d at 741).

Similarly, Banks's alternative claim of ineffective assistance of counsel fails because no "reasonable probability" exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 2064, 2068 (1984) (establishing a two-step analysis that requires a showing of prejudice); *see also Gates v. State*, 398 N.W.2d 558, 559 (Minn. 1987) (noting that if an ineffective-assistance-of-counsel claim fails on the prejudice prong, this court need not review the performance prong).

12

## III.    Sufficiency of the Evidence

When considering a claim of insufficient evidence, this court examines the evidence in the light most favorable to the conviction to determine if it would permit a jury to reasonably conclude that the defendant was guilty of the offense. *State v. Nelson*, 812 N.W.2d 184, 187 (Minn. App. 2012). This court also assumes "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989).

As a preliminary matter, Banks maintains that this court should apply the heightened standard required to review convictions based on circumstantial evidence. Contrary to Banks's assertion, however, the evidence of A.M.P.'s identity presented at trial was almost entirely direct, not circumstantial, evidence. That evidence included: Okerlund's testimony that the car was registered to A.M.P., his recollection that A.M.P's driver's license description matched that of the woman in the park, his testimony that they discussed the need for her to obtain a Minnesota driver's license, his testimony that she independently verified her information and confirmed that she owned the car, and his testimony that no one disputed that the woman was A.M.P. Because this evidence stems solely from Okerlund's personal observations, it cannot be construed as circumstantial evidence. *See Bernhardt v. State*, 684 N.W.2d 465, 477 n.11 (Minn. 2004) (explaining that circumstantial evidence is not based on personal knowledge or observation).

Turning to the substance of Banks's argument, sufficient evidence was presented at trial to sustain his conviction. Viewing the evidence in the light most favorable to the verdict, we assume that the jury believed Okerlund's testimony that the woman identified

13

herself and that Banks did not alert him that the woman was not A.M.P.  We also assume that the jury disbelieved any contrary testimony, including any of Banks's explanation that was inconsistent with Okerlund's testimony.  The jury was in the best position to assess the testimony and it rejected the defense theory.  On this record, the evidence was sufficient to support the jury's verdict.

### IV.    Prosecutorial Misconduct

Banks argues that the prosecutor committed prejudicial misconduct by (1) injecting issues of race in closing arguments, (2) improperly questioning him in cross-examination, (3) implying in closing arguments that he threatened A.M.P., and (4) insinuating that A.M.P. was uncooperative with the prosecution.  He contends that these errors entitle him to a new trial.  We disagree.

To warrant reversal for a new trial, the prosecutor's misconduct—placed into the context of the entire trial—must be so serious and prejudicial that it impairs a person's constitutional right to a fair trial.  *State v. Johnson*, 616 N.W.2d 720, 727–28 (Minn. 2000).  We address each argument in turn.

### 1.    Claims of Objected-to Prosecutorial Misconduct

Banks's claims of objected-to prosecutorial misconduct are examined first.  For objected-to prosecutorial misconduct, this court applies a two-tiered harmless-error test, "the application of which varies based on the severity of the misconduct."  *State v.*

*McDaniel*, 777 N.W.2d 739, 749 (Minn. 2010) (quotation omitted).[8]  Serious misconduct is "harmless beyond a reasonable doubt if the verdict rendered was surely unattributable to the error," while less serious misconduct is harmless unless "the misconduct likely played a substantial part in influencing the jury to convict."  *State v. Powers*, 654 N.W.2d 667, 678 (Minn. 2003) (quotations omitted).

### A.     *Injecting Issues of Race in Closing Arguments*

Banks argues that, in closing arguments, the prosecutor directed the jury's attention to irrelevant racial issues and that he improperly accused Banks of putting the case into a "racial context."  Because Banks challenged these statements in his post-trial motion, we review the prosecutor's statements for harmless error.  *See State v. Glowacki*, 630 N.W.2d 392, 398 (noting that a post-trial motion for a new trial adequately preserves a challenge to a jury instruction); Minn. R. Crim. P. 26.04, subd. (1)(1) (providing that prosecutorial misconduct is one possible ground for a defendant's motion for a new trial). *But see State v. Ray*, 659 N.W.2d 736, 747 n.4 (Minn. 2003) (cautioning defense counsel that "failure to object to improper closing argument may waive any claim of prosecutorial misconduct on appeal").

In closing arguments, the prosecutor may argue all reasonable inferences from evidence in the record and is free to make arguments in anticipation of the defense closing argument.  *State v. Salitros*, 499 N.W.2d 815, 817–18 (Minn. 1993).  When reviewing

---

[8]  The supreme court has questioned the viability of this two-tiered test but has not overruled it.  *McDaniel*, 777 N.W.2d at 749; *State v. Tayari-Garrett*, 841 N.W.2d 644, 651 (Minn. App. 2014), *review denied* (Minn. Mar. 26, 2014).

claims of prosecutorial misconduct, we consider "the closing argument as a whole, rather than just selective phrases or remarks." *State v. Walsh*, 495 N.W.2d 602, 607 (Minn. 1993). Injecting issues of race into a closing argument may be serious prosecutorial misconduct. *State v. Cabrera*, 700 N.W.2d 469, 473–75 (Minn. 2005) (holding that suggestion by state that the defense theory amounted to "racist speculation" was serious prosecutorial misconduct).

In his closing argument, the prosecutor stated:

> Compare the defendant's testimony to the other evidence in this case. One of the first things he does is he says the officer was following me into the park and I pointed that out to the woman that I was with, trying to insinuate that there's some sort of racial context in this case. [Defense counsel] asked you about it during voir dire, he suggested some of it in the questioning. But the defendant wants you to believe that this officer was somehow out to get him. That was right at the beginning of the defense's testimony. And you saw Officer Okerlund. You heard his testimony. You heard that the car was already parked there, first of all, before he even ran the plates. He doesn't know these people, he could care less whether he's black and she's white. But take that into consideration. The first thing the defendant does when he gets up on the stand is start trying to plant this seed that this is some sort of the cops are out to get me.

While it would be misconduct for a prosecutor to inject race where it is irrelevant, race was raised by the defense throughout trial. In voir dire, Banks's counsel asked the potential jurors whether they would have difficulty being fair and impartial, given that the defendant was a black man. He further asked the jurors "[i]s there anything about the fact that the defendant is black, was in relations with a white woman which would cause you any difficulty or cause you to be prejudiced against the defendant in this case?" Banks

16

testified that both A.M.P. and J.S. are "Caucasian." Banks further testified that he noticed Okerlund watching him and J.S. in the park and that he later saw Okerlund following them, but "[d]idn't think much to it because [he] wasn't doing anything wrong." This testimony could have reasonably been construed to insinuate that Okerlund was improperly following Banks because of his race.

Given these considerations, the prosecutor's statements in closing argument, trying to counter an anticipated defense argument about race-based police harassment, were fair. Accordingly, these statements were not misconduct.

### B.    Cross-Examination

Banks argues that the prosecutor committed misconduct on cross-examination by asking Banks if he had "experience with the criminal justice system" and by questioning Banks regarding prior bad acts.

The first instance of alleged misconduct arose in the context of the prosecutor's line of questioning regarding Banks's awareness of the domestic-abuse no-contact order. Defense counsel immediately objected, and the district court sustained the objection. The second instance occurred when the prosecutor asked Banks if he had ever used a certain telephone number to have people contact him, with no additional context.[9] Defense counsel again immediately objected, and the district court swiftly called a bench conference outside the presence of the jury. The district court again sustained the objection, and the

---

[9] Based on the transcript, the prosecutor appears to have been referring to a prior bad act, but that information is not in the record.

prosecutor moved on without revisiting the issue. The district court later instructed the jury not to speculate about the answers to any objected-to questions.

We conclude that, while both questions were improper and were therefore misconduct, the guilty verdict was not attributable to them. *See State v. Dobbins*, 725 N.W.2d 492, 507–08 (Minn. 2006). The district court adroitly intervened immediately upon each objection and sustained them before any harm came to Banks. Moreover, the district court's later jury instruction prevented any improper speculation by the jury. *See State v. Jones*, 755 N.W.2d 341, 352 (Minn. App. 2008) (noting the presumption under Minnesota law that the jury follows the district court's instructions), *aff'd*, 772 N.W.2d 496 (Minn. 2009). Accordingly, we conclude that the misconduct was harmless beyond a reasonable doubt and Banks is not entitled to relief on this ground. *See Dobbins*, 725 N.W.2d at 508.

### 2.    Claims of Unobjected-to Prosecutorial Misconduct

Because Banks did not object to the remaining instances of alleged prosecutorial misconduct, we review them under a modified plain-error test. *See State v. Carridine*, 812 N.W.2d 130, 146 (Minn. 2012) (citing *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006)). Under this modified test, Banks must show that the misconduct was error and that the error was plain. *Id.* An error is plain if it "contravenes case law, a rule, or a standard of conduct." *Ramey*, 721 N.W.2d at 302. "The burden then shifts to the [s]tate to demonstrate that the error did not affect the defendant's substantial rights." *Carridine*, 812 N.W.2d at 146.

18

### A.    *Implied Threats to A.M.P.*

Banks argues that by introducing facts not in evidence—circumstances related to his relationship with A.M.P. and to the criminal offense underlying the domestic-abuse no-contact order—the prosecutor improperly insinuated that Banks had threatened A.M.P., thereby causing her to request dismissal of the order for protection. He challenges several portions of the prosecutor's closing argument as highly prejudicial and irrelevant to the charged offense.

A prosecutor may not imply to the jury that the defendant has threatened witnesses absent direct proof. *See State v. Harris*, 521 N.W.2d 348, 352–53 (Minn. 1994) (discussing prosecutor's implication that the defendant was the reason for a witness's participation in the witness-protection program). Prosecutors may, however, argue all reasonable inferences from evidence in the record. *Salitros*, 499 N.W.2d at 817.

In closing argument, the prosecutor stated that A.M.P. and Banks lived together at the time. The prosecutor further argued that A.M.P.'s voluntary dismissal of the order for protection correlated with Banks's first appearance on the original domestic-abuse charges and that the dismissal of the original domestic-abuse charge giving rise to the domestic-abuse no-contact order was correlated with Banks's arrest date.

First, Banks's assertion that the facts relied upon by the prosecutor were not in evidence is incorrect. The district court received into evidence the original order for protection, the domestic-abuse no-contact order, and the orders later dismissing them. These documents contain both A.M.P.'s address and Banks's address for service, which are identical. And a review of the record shows that the prosecutor did not misstate the

19

date that A.M.P. requested dismissal of the original order for protection, the date of Banks's first appearance on the domestic-abuse charges, the date of Banks's arrest, or the date the original domestic-abuse charges were dropped. From these facts, the prosecutor was permitted to argue any reasonable inference from the evidence. To infer correlation between the relevant dates was reasonable.

Moreover, the defense theory relied heavily on Banks's explanation that he believed the order for protection had been dropped. Thus, the prosecutor's statements were reasonable in anticipation of the defense closing argument, and we reject Banks's contention that these circumstances were irrelevant to the charged offense. Because we conclude that these arguments were permissible on this record, they were not misconduct.

### B. Assertions Regarding A.M.P.'s Cooperation

Banks next asserts that the prosecutor committed prejudicial misconduct by insinuating, through cross-examination of Banks, that A.M.P. had dismissed the order for protection because she was uncooperative with the prosecution.

Banks challenges the following colloquy:

> Q: And that [original domestic-abuse] case was dismissed on June 17th; right?
> A: Yes.
> Q: And that was because [A.M.P.] was not cooperative with the prosecution?
> [Defense counsel]: Objection. Irrelevant.
> A: I did not know that the case was dismissed for un-cooperative, or whatever you're saying. At the time my [attorney] got a letter from [A.M.P.] that they forwarded to the prosecutor's office that stated that she made false claims against me. If that's the witness being uncooperative, I guess, but I thought that was a witness admitting that she made a false claim.

20

Although it may have been misconduct to refer to A.M.P.'s motive in cross-examination, Banks answered favorably, consistent with his theory of the case. Thus, Banks's substantial rights were not affected by this exchange.

## D E C I S I O N

Because Banks has not shown that he suffered prejudice warranting dismissal of the complaint by the district court under rule 30.02 of the Minnesota Rules of Criminal Procedure, the district court acted within its discretion in denying his motion to dismiss. Because Banks's other claims lack merit or raise issues that did not affect his substantial rights, we affirm his conviction.

**Affirmed.**