*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1805**

State of Minnesota,
Respondent,

vs.

Yachin Kadimel Scott,
Appellant

**Filed November 28, 2016
Affirmed
Worke, Judge**

Hennepin County District Court
File No. 27-CR-15-11413

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Elizabeth R. Johnston, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sara J. Euteneuer, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Cleary, Chief Judge; Worke, Judge; and Ross, Judge.

**U N P U B L I S H E D   O P I N I O N**

**WORKE**, Judge

Appellant challenges his attempted second-degree murder conviction, arguing that

his right to a speedy trial was violated and that the district court abused its discretion by

denying his motion to dismiss the charges against him under Minn. R. Crim. P. 30.02 for unnecessary delay by the prosecutor in bringing the case to trial. We affirm.

## FACTS

In February 2013, T.T. and appellant Yachin Kadimel Scott went to a duplex in Northeast Minneapolis to obtain drugs. Scott wanted to have sex with T.T., but T.T. turned him down. When Scott and T.T. got into T.T.'s car to leave, Scott asked T.T. if she had any drugs. T.T. said she did not. Scott pulled out a knife and stabbed T.T. T.T. escaped and ran to a nearby home where a neighbor found her. T.T. was taken to the hospital and treated for a potentially fatal wound to her throat.

On February 28, 2013, a complaint was filed charging Scott with first-degree assault. On September 20, 2013, Scott made a speedy-trial demand, and the case was scheduled for trial on December 9, 2013. Scott's attorney informed him that the December 9 trial date was beyond the 60-day speedy-trial period. Scott initially refused to waive his speedy-trial right, but when his attorney explained that December 9 was the best date for the attorney, Scott agreed to set the trial on that date.

On December 9, 2013, T.T. failed to appear to testify at Scott's trial. The state had attempted to subpoena T.T., but was unable to serve the subpoena. There was an active warrant for T.T.'s arrest on an unrelated criminal matter, but police had also been unable to locate her. Because the prosecutor was having difficulty locating T.T., she dismissed the case. That day, the prosecutor filed a notice of dismissal pursuant to Minn. R. Crim. P. 30.01, citing an inability to prove the charge against Scott beyond a reasonable doubt without T.T.'s testimony.

2

T.T. was arrested in late March 2014. She remained in custody until May of that year and was sentenced to 180 days in the workhouse in July. Scott's case was referred back to the prosecutor for recharging in May 2014, but prosecutors wanted a statement from T.T. before determining whether to file a new complaint. In the spring of 2015, police interviewed T.T., and the prosecutor filed a new complaint on April 30, 2015, charging Scott with attempted second-degree intentional murder and first-degree assault.

Scott moved to dismiss the charges on the ground that his speedy-trial right had been violated. Scott also moved to dismiss the case under Minn. R. Crim. P. 30.02. After a hearing on June 25, 2015, the district court denied Scott's motions.

Following a trial that began on August 4, 2015, a jury found Scott guilty of attempted second-degree intentional murder and first-degree assault. This appeal follows.

## DECISION

### I.

"Criminal defendants have the right to a speedy trial under the constitutions of both the United States and Minnesota." *State v. Taylor*, 869 N.W.2d 1, 19 (Minn. 2015) (citing U.S. Const. amend. VI; Minn. Const. art. I, § 6). In considering whether a defendant's speedy-trial right was violated, appellate courts must consider: "(1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted his . . . right to a speedy trial; and (4) whether the delay prejudiced the defendant." *State v. Windish*, 590 N.W.2d 311, 315 (Minn. 1999) (citing *Barker v. Wingo*, 407 U.S. 514, 530-33, 92 S. Ct. 2182, 2192-93 (1972)). No factor is either necessary or sufficient to

finding a speedy-trial violation. *Taylor*, 869 N.W.2d at 19. Instead, they are related factors that must be considered together with any other relevant circumstances. *Id.* This court reviews a claimed speedy-trial violation de novo. *Id.*

***Length of delay***

For purposes of a speedy-trial challenge, the delay is calculated based on the date "when a formal indictment or information is issued against a person or when a person is arrested and held to answer a criminal charge." *State v. Jones*, 392 N.W.2d 224, 235 (Minn. 1986). A delay exceeding 60 days from the date of a speedy-trial demand raises a presumption that a violation has occurred and requires analysis of the remaining factors. *Taylor*, 869 N.W.2d at 19; *see also* Minn. R. Crim. P. 11.09(b). Accordingly, "the length of the delay only serves as a starting point for a speedy trial analysis." *State v. Johnson*, 498 N.W.2d 10, 15 (Minn. 1993).

Scott was originally charged on February 28, 2013, and he demanded a speedy trial on September 20, 2013. His case did not proceed to trial until August 4, 2015. The total delay between charging and trial was approximately 29 months, and the time between Scott's speedy-trial demand and trial was approximately 22 months. But the initial charges were dismissed on December 9, 2013, and new charges were not brought until April 30, 2015. Therefore, Scott was not facing charges for nearly 17 of the 29 months between filing of the original complaint and his trial. Despite this, Scott argues that this 17-month period must be included in determining the length of the delay. We disagree.

4

Scott relies on *State v. Kasper*, but, in the absence of bad faith, *Kasper* does not require that a time period when no charges are active be included in determining the length of the delay. 411 N.W.2d 182 (Minn. 1987). It requires only that the speedy-trial clock "not start again from zero with the new complaint." *Id.* at 184; *see also United States v. MacDonald*, 456 U.S. 1, 7, 102 S. Ct. 1497, 1501 (1982) ("[T]he Speedy Trial Clause has no application after the Government, acting in good faith, formally drops charges."); *accord United States v. Pajari*, 715 F.2d 1378, 1384 (8th Cir. 1983) ("[A]ny delay between the dismissal of the original charge and the return of the indictment cannot be attacked under the [S]ixth [A]mendment speedy trial guarantee."). Following the analysis in *Kasper*, *MacDonald*, and *Pajari*, we concluded in *In re Welfare of G.D.*, that the time period between dismissal of a juvenile-delinquency petition and refiling is not relevant to a speedy-trial analysis. 473 N.W.2d 878, 882 (Minn. App. 1991). We see no reason to depart from this precedent and again conclude that, absent bad faith, the length of delay does not include the time during which charges have been dismissed.

The prosecutor here did not act in bad faith by dismissing the charges and later filing a second complaint. As the district court found, the state made attempts to secure T.T.'s appearance and testimony for the original trial date. When T.T. did not appear, the state could not prove its case. Rather than request a continuance, the prosecutor chose to dismiss the matter given that she did not know when, if ever, she would be able to secure T.T.'s testimony. In its order denying Scott's motion to dismiss, the district court determined that the state's decision to dismiss the charges was "appropriate" and demonstrated "willingness to relent from the burdens a defendant incurs while in

5

custody." While the state could have been more diligent in securing a statement from T.T. and refiling the charges, the district court found, and the evidence indicates, that the delay was, at most, the result of the state's negligence. Unlike the prosecutor in *Kasper*, who dismissed and refiled charges to circumvent the denial of a continuance and restart the speedy-trial clock, the prosecutor here did not dismiss and refile the charges against Scott in an attempt to gain any unfair advantage. 411 N.W.2d at 185.

Excluding the period between the dismissal of the original charges and the filing of the second complaint, approximately one year passed from the time Scott was initially charged and his trial, and nearly six months passed between his speedy-trial demand and the commencement of trial. Because Scott's trial began more than 60 days after his speedy-trial demand, there is a presumption that a violation occurred and this court must examine the remaining factors. *See Taylor*, 869 N.W.2d at 19.

### *Reason for delay*

The key question under this factor is whether the government or the defendant is responsible for the delay. *Id.* When the overall delay in bringing a case to trial is caused by the defendant, there is no speedy-trial violation. *State v. DeRosier*, 695 N.W.2d 97, 109 (Minn. 2005). Even as to delay that weighs against the state, "different weights should be assigned to different reasons." *Taylor*, 869 N.W.2d at 20 (quotation omitted). "For instance, a deliberate delay to hamper the defense weighs heavily against the prosecution, while neutral reasons such as negligence or overcrowded courts weigh less heavily." *Id.* (quotations omitted).

Because the right to a speedy trial attaches at the time a defendant is arrested or charged, *Jones*, 392 N.W.2d at 235, the reasons for the entire delay, not merely delay after the speedy-trial demand, should be considered. *See State v. Osorio*, 872 N.W.2d 547, 554 (Minn. App. 2015) (considering reason for delay before defendant asserted his speedy-trial right). Scott argues that the reasons for the delay in recharging the case after dismissal must also be considered. But, as stated above, this intervening period when no charges were pending is irrelevant to the speedy-trial analysis. *See G.D.*, 473 N.W.2d at 882. Accordingly, we consider the period between the filing of the original complaint on February 28, 2013, and commencement of Scott's trial on August 4, 2015, less the period between dismissal and refiling from December 9, 2013, to April 30, 2015.

There is no record of the reason for the almost seven-month delay between the filing of the original complaint and Scott's speedy-trial demand on September 20, 2013, and Scott does not allege that this delay was caused by the state. The December 9, 2013 trial date was scheduled at the hearing on September 20, 2013. Although this was an 80-day delay, the trial date was set with Scott's consent and at least partially because of his attorney's scheduling issues. The delay between the filing of the original complaint and the December 9, 2013 dismissal does not weigh against the state.

After T.T.'s absence resulted in dismissal, the state recharged the case on April 30, 2015. After several pretrial hearings, trial commenced on August 4, 2015. The record does not indicate how the August 4 trial date was set, but it does not appear that Scott ever objected to that date, and Scott does not allege that the state caused the delay. The

7

96-day delay between the filing of the second complaint and the commencement of trial does not weigh against the state.

Overall, the approximately 12-month delay between the filing of the original complaint and Scott's trial does not appear to have been caused by the state. The reasons for the delay therefore do not weigh against the state or in favor of Scott's claim. This factor is neutral.

### Assertion of right

A "defendant's assertion of the right [to a speedy trial] is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *State v. Friberg*, 435 N.W.2d 509, 515 (Minn. 1989) (quotation omitted). "The circumstances surrounding the frequency and intensity of a defendant's assertion of a speedy trial demand—including the import of defense decisions to seek delays—can be weighed in the third [factor]. . . ." *Windish*, 590 N.W.2d at 318. Although the defendant is not required to repeatedly reassert the right, "the strength of the demand is likely to reflect the seriousness and extent of the prejudice which has resulted." *Friberg*, 435 N.W.2d at 515.

Scott did not assert his right to a speedy trial until September 20, 2013, nearly seven months after he was charged. When his trial date was set more than 60 days from September 20, Scott reluctantly agreed to waive his speedy-trial right until that date.

After the second complaint was filed on April 30, 2015, Scott did not renew his speedy-trial demand at his first appearance on May 1. At a bail hearing on May 8, Scott noted his previous assertion of his right to a speedy trial. Scott then moved to dismiss for

8

violation of his speedy-trial right on June 9, 2015, and a hearing was held on his motion on June 25.

Because Scott asserted his right to a speedy trial and moved to dismiss for a violation of that right, this factor weighs in his favor. Scott, however, waited seven months after he was charged to assert his speedy-trial right and then temporarily waived that right. Accordingly, this factor does not weigh heavily against the state.

*Prejudice*

Courts consider three interests "in determining whether a defendant suffered prejudice [from delay]: (1) preventing oppressive pretrial incarceration; (2) minimizing the anxiety and concern of the accused; and (3) preventing the possibility that the defense will be impaired." *Taylor*, 869 N.W.2d at 20 (quotation omitted). The final factor, impairment of the defense, is the most serious. *Windish*, 590 N.W.2d at 318. "A defendant does not have to affirmatively prove prejudice; rather, prejudice may be suggested by likely harm to a defendant's case." *Id*. Delay that harms the defense may include damage to a witness's ability to recall "essential facts," the unavailability of a witness, or impairment of representation. *Jones*, 392 N.W.2d at 235–36.

Scott concedes that he was incarcerated on an unrelated matter when he was initially charged in 2013. Scott remained in custody on the other case until he was placed on intensive supervised release in February 2015. If a defendant is already in custody for a separate offense, the interests of preventing oppressive pretrial incarceration and minimizing anxiety and concern are not implicated. *Taylor*, 869 N.W.2d at 20.

When he was recharged on April 30, 2015, Scott was incarcerated solely as a result of the charges in this case. He remained in custody until June 29, 2015, when he was conditionally released. He was not reincarcerated until the jury rendered its verdict on August 7, 2015. Scott argues that during this 60-day period of pretrial incarceration he lost his job. While the loss of employment is prejudicial, the length of pretrial incarceration after the second complaint was short given the seriousness of the charges, and the district court attempted to ameliorate the disruption to Scott's employment by releasing him more than a month prior to trial. *See State v. Givens*, 356 N.W.2d 58, 62 (Minn. App. 1984) (concluding that there was no prejudice when defendant was incarcerated for over five months prior to trial), *review denied* (Minn. Jan. 2, 1985).

Scott also argues that he was prejudiced by the addition of the attempted second-degree intentional murder charge in the second complaint. But Scott does not claim that the new charge impaired his defense or further delayed trial; he simply argues that it was prejudicial because it exposed him to additional prison time upon conviction. This is not the type of prejudice implicated by a defendant's speedy-trial right.

Scott next argues that the delay inhibited his ability to identify and locate witnesses. He claims that T.T. revealed in 2015 that two people were with her and Scott on the night of the stabbing. But T.T. testified that these two witnesses were Scott's friends. Scott also testified that before the stabbing he and T.T. were with his friends. Accordingly, Scott was fully aware of these witnesses in 2013 and could have sought them out at that time. Moreover, Scott has failed to assert that these witnesses could have provided exculpatory testimony.

10

Scott further argues that his defense was prejudiced by the delay because T.T. and other state witnesses testified that they did not remember details of the incident and the surrounding events. But T.T. was the state's primary witness. Her inability to remember details presumably benefitted Scott's defense. The details that other state witnesses could not recall were minor and do not show prejudice.

Scott has not shown that any potentially exonerating evidence, witnesses, or testimony was lost as a result of the delay. If anything, the delay may have tilted the case slightly in Scott's favor. Furthermore, while Scott may have lost employment due to pretrial incarceration, the total amount of pretrial incarceration as a result of the charges in this case was relatively slight. The lack of prejudice weighs against Scott's speedy-trial claim.

In sum, although the delay presumptively violated Scott's speedy-trial right, the record does not show that the state was at fault for the delay, and Scott acquiesced to the delay from February 28 to December 9, 2013. Scott has not demonstrated that the delay impaired his defense or that he was substantially prejudiced by pretrial incarceration. We therefore conclude that Scott's speedy-trial right was not violated.

## II.

Scott next argues that the district court abused its discretion by denying his motion to dismiss the refiled charges under Minn. R. Crim. P. 30.02. He claims that the state unnecessarily delayed by dismissing the charges in December 2013 and waiting until April 30, 2015, to recharge the case.

11

The district court "may dismiss the complaint . . . if the prosecutor has unnecessarily delayed bringing the defendant to trial." Minn. R. Crim. P. 30.02. Rule 30.02 applies to claims of both pre-charge and post-charge delay. *State v. Banks*, 875 N.W.2d 338, 345 (Minn. App. 2016), *review denied* (Minn. Sept. 28, 2016). The use of the word "may" in the rule means that the decision is within the district court's discretion and is reviewed by this court for an abuse of that discretion. *Id.* at 344.

We recently held "that prejudice is required to justify dismissal under rule 30.02 for unnecessary pre-charge delay." *Id.* at 345. In *Banks*, the state recharged the defendant nearly 11 months after dismissing a similar charge for "unavailability of admissible testimony." *Id.* at 342-43. The district court denied Banks's motion to dismiss the charge for unnecessary delay and found that Banks was not prejudiced by the delay. *Id.* at 343, 346. Because Banks was not incarcerated during the 11 months between dismissal and recharging, did not show that he experienced any anxiety or concern over the possibility of renewed charges, and did not establish that his defense would be impaired, this court agreed that Banks failed to show prejudice and affirmed the district court's order. *Id.* at 346.

Similar to *Banks*, the district court found that Scott did not suffer prejudice as a result of the delay. Scott was not incarcerated on this matter between dismissal and recharging, did not show that he suffered anxiety or concern about possible new charges, and did not demonstrate that his defense was hampered by the delay. Because Scott suffered no prejudice, the district court did not abuse its discretion by denying Scott's rule 30.02 motion to dismiss.

12

While Scott did not show the necessary prejudice to justify dismissal under rule 30.02, we caution the state to more closely monitor pre-charge delay. Although we do not believe that the state acted in bad faith, the prosecutor was less than diligent in securing T.T.'s statement and recharging Scott. T.T. was in state custody for much of 2014, yet new charges were not filed until April 30, 2015. Had Scott been able to show some significant prejudice as a result of this delay, the outcome of his rule 30.02 motion may well have been different.

**Affirmed.**